Philadelphia School of Beauty Culture v. Haas,
Superintendent of Public Instruction, etc.

*McNees, Wallace & Nurick,* for plaintiff.
*T. McKeen Chidsey,* Attorney General, and *Elmer
T. Bolla,* Deputy Attorney General, for defendants.

SMITH, J., August 15, 1949.—Plaintiff filed its bill of complaint seeking to enjoin defendant from enforcing an alleged unconstitutional statutory provision prohibiting a school of beauty culture from making any charge for materials used by its students in giving clinical treatments. Although one of the prayers of the bill was for a preliminary injunction, no decree or order of any kind has heretofore been entered. To this bill defendant duly filed an answer raising preliminary objections which are now before us for disposition.

## The Bill

A brief summary of the averments of the bill is as follows:

Plaintiff is a Pennsylvania corporation. Since 1933 it has owned and operated and presently owns and operates in the City of Philadelphia a school of beauty culture in which it has invested large sums of money. Further, doing business as Rudemar School of Beauty Culture, it is duly registered with the Bureau of Professional Licensing of the Department of Public Instruction under the provisions of the Beauty Culture Law of May 3, 1933, P. L. 242, as amended, 63 PS §507 et seq.

Plaintiff's school has at the present time an enrollment of 100 students. The preparation and training of these students for the practice of beauty culture requires extensive clinical work entailing the use of a large quantity of bleaches, creams, lotions, powders, solutions, dyes, shampoos, rinses, nail polish and other materials, the reasonable cost of which now substantially exceeds the sum of $5,000 per annum.

Section 7 of the Beauty Culture Law (63 PS §513) provides, inter alia:

". . . No school of beauty culture shall, directly or indirectly, charge any money whatsoever for treatment

by its students or for materials used in such treatment".

The Department of Public Instruction in section VII-C-7 of its Bulletin 605, entitled "Interpretations and Regulations for the Administration of the Beauty Culture Law", sets forth that "any direct or indirect charge for beauty culture services in a school of beauty culture is definitely forbidden by section 7 of the Act" and, further, that "all necessary supplies shall be furnished by the school, free of charge".

Plaintiff has never charged and will never make any charge whatsoever for students' services. Plaintiff intends, however, to charge the public the reasonable cost of the materials used by its students in clinical treatments since it is no longer in a position to absorb the greatly increased and rising costs of materials used by them therein, especially in view of the development in recent years of new and more expensive processes.

Plaintiff further pleads that it has been informed defendant intends to enforce the provisions of the law and the regulation hereinbefore referred to according to his construction that a beauty culture school may charge nothing for materials which its students are required to use, irrespective of what these materials may now cost; and that, upon such enforcement, plaintiff will be unable to compete with beauty culture schools located in adjoining States where there are no comparable provisions in the law requiring that such materials must be furnished free of charge, the existence of its school will be jeopardized, its property rights will be invaded and it will sustain immediate and irreparable injury.

Whereupon plaintiff asks for injunctive relief averring that the aforesaid provision of section 7 of the Beauty Culture Law and of the regulation in question prohibiting any charge whatsoever for materials used

by students in clinical treatments are unreasonable, unconstitutional and void, and cannot be sustained as a proper exercise of the police power in that they have "no real, reasonable or substantial relation to the public health and safety or to any other legitimate police power purpose" and, further, in that they violate the due process and equal protection clause of the fourteenth amendment to the Constitution of the United States as well as article I, secs. 1, 9, 11 and 26 of the Constitution of the Commonwealth of Pennsylvania.[1]

## The Answer

Defendant filed an answer raising preliminary objections and praying that the bill be dismissed for the 10 reasons hereinafter specifically considered.

## Discussion

Plaintiff has pleaded in its bill that, doing business as Rudemar School of Beauty Culture, it is duly registered with the Bureau of Professional Licensing of the Department of Public Instruction under the provisions of the Beauty Culture Law of May 3, 1933, P. L. 242, as amended, 63 PS §507 et seq.

The first four preliminary objections are to the effect that plaintiff is not a proper party, is not interested, has not averred by what legal right it is entitled to relief, and does not come into equity with clean hands. These objections question the right of plaintiff, a Pennsylvania corporation, to conduct its school under an assumed name. However, it is well settled that a corporation in the absence of a statutory prohibition, and we know of none in this State, may assume another name for business purposes and may sue or be sued

---

[1] Plaintiff in its bill raised other constitutional questions as to the validity of the prohibition against charging for materials used by its students in giving clinical treatments. These, however, were not pressed by it on the argument of the preliminary objections. Otherwise plaintiff does not attack the constitutionality of the Beauty Culture Law.

either in the corporate name or in the assumed name: Phillips v. International Textbook Co., 26 Pa. Superior Ct. 230; Berg Bros. v. Douredoure Bros., 5 D. & C. 597; McCarthy Bros. & Wilson, Inc., v. Schmitt, 6 D. & C. 147; Hershey Estates v. Rettew et al., 19 D. & C. 262; Apparel Arts Publications, Inc., v. United Knitting Co., Inc., 17 D. & C. 685.

Thus in McCarthy Bros. & Wilson, Inc., v. Schmitt, supra, Judge Stern, now Mr. Justice Stern of our Supreme Court, said, page 148:

"The overwhelming weight of authority in Federal and State courts is to the effect that a corporation may trade under an assumed name, and thus have two or more names, one by its charter or certificate of incorporation, and another by usage and reputation, so that deeds, contracts or leases made in the assumed name will be binding. This and analogous principles of law are discussed fully in 14 Corpus Juris, 308, 309, 323, 324."

Again in Hershey Estates v. Rettew et al., supra, it was held, page 263:

"On the other hand, the defendants contend that the plaintiff corporation, trading under the fictitious name of 'Hershey Lumber Company' and not having registered under the Fictitious Names Act, may not sue upon the check in question, and that the deed of trust, properly recorded, is notice to all parties who contract with the company that no personal liability is imposed upon the trustees.

"A corporation does not have the right to register under an assumed or a fictitious name: Opinion by Schnader, Attorney General, Fictitious Names of Corporations or of Individuals in Corporate Form, 13 D. & C. 524.

"A corporation may, however, in the absence of statutory provision to the contrary, assume another name by which to contract or to do business so that

it may be known by two different names and may sue and be sued in either: McCarthy Bros. & Wilson, Inc., v. Schmitt, 6 D. & C. 147."

In view of the foregoing and since admittedly the Fictitious Names Act does not apply to corporations but only to individuals, we think that plaintiff may trade as Rudemar School of Beauty Culture and that it was properly registered in the Department of Public Instruction under this assumed name. Accordingly, we find that none of defendant's first four preliminary objections has any merit.

Defendant's fifth, sixth and seventh preliminary objections are that plaintiff has a full, complete and adequate remedy at law; that there is no immediate and irreparable injury pending to its detriment, and that equity procedure requires a clear statement of the fact that it is entitled to relief. These objections are also without merit.

Where a statute is unconstitutional or otherwise invalid and where in the attempt to enforce it there is a direct invasion of property rights resulting in irreparable injury, an injunction will be issued to restrain the enforcement thereof: Long et al. v. Metzger et al., 301 Pa. 449, 454.

The business of conducting the beauty culture school from which plaintiff derives revenue is a property right. Therefore, if the enforcement of an alleged unconstitutional statutory provision will, as plaintiff avers, invade its property rights, cause it to sustain immediate and irreparable injury and jeopardize the existence of its school in which it has invested large sums of money, clearly plaintiff is entitled to equitable relief from this court. The late Judge Wickersham, speaking for this court, so held in Old Reliable Barber School v. Ade et al., 43 Dauph. 307, where after quoting extensively from the Long case, supra, he said, page 314:

". . . the business of conducting barber schools, from which the plaintiff derives revenue, is a property right which might easily be destroyed were the benefits greatly reduced by a criminal prosecution, and we think where a property right is involved and is likely to be destroyed or very greatly damaged by prosecution, equity should interfere to protect such right. It is not to be overlooked that a fundamental question of constitutionality or legal right is involved, . . ."

Again in Bell Telephone Company of Pennsylvania v. Driscoll et al., 343 Pa. 109, it was said, page 112:

"We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it. That point has been decided too frequently to be longer in doubt." (citing authorities).

Wherefore we conclude that this court has the right to entertain the instant bill.

Defendant's eighth preliminary objection avers "that no adequate reason exists for the instant case as counsel for the plaintiff instituted in the name of other plaintiffs identical proceedings against the same defendant for the same relief." This objection is also without merit since plaintiff is not precluded from maintaining its action merely because other litigants may be asking for similar relief in another action. Further, the objection is a speaking demurrer and as such nothing can be predicated on it: Gordon v. Daylor et al., 43 Dauph. 412.

Defendant's tenth preliminary objection avers that there is no proper verification to the bill. In support of this objection defendant in his brief states "the verification is not that of the corporation as it is only signed by Winifred A. Fayant. The contents and the

signature, Winifred A. Fayant, of (to) the verification, does not specifically show whose verification it is."

There is nothing in our Pennsylvania Rules of Equity Practice prescribing the form of verification to a bill. Rule 9 provides that all pleadings must be sworn to. However, where the form follows that used on the law side of the court, it is sufficient: 8 Standard Pa. Practice 153, sec. 208.

Pa R. C. P. 1024(a), with respect to verification of pleadings in actions at law, provides:

"Every pleading containing averments of facts not appearing of record in the action or containing denials shall be verified on oath or affirmation that the averments or denials are true upon the affiant's personal knowledge or information and belief. The affiant need not aver the source of his information or expectation of ability to prove the averments or denials at the trial. A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder."

The verification to the instant bill is signed by Winifred A. Fayant. Therein she states:

". . . she has read the foregoing Bill in Equity; that she is president of Philadelphia School of Beauty Culture, the plaintiff named in said Bill in Equity; that she is authorized to make this affidavit on behalf of said corporation; that the facts set forth in said Bill in Equity are true and correct to the best of her knowledge, information and belief; and that the plaintiff expects to be able to prove the same at the hearing thereon."

We think that this verification fully complies with all the requirements of the procedural rule above quoted and that the objection thereto is most frivolous.

. We have now considered all of defendant's preliminary objections other than the ninth one. The controling question raised by this objection is whether the

provision of section 7 of the Beauty Culture Law of May 3, 1933, P. L. 242, 63 PS §513, and the regulation issued by defendant pursuant thereto prohibiting a school of beauty culture from charging for the materials used by its students in clinical treatment is constitutional as a proper exercise of the police power.

The general principles with reference to the police power are well settled. They were exhaustively discussed in Nolan v. Jones, 263 Pa. 124, where it was said, inter alia, pages 128-129:

"A statute enacted for the protection of the public health, safety or morals, can be set aside by the courts only when it plainly has no real or substantial relation to those subjects, or is a palpable invasion of rights secured by the fundamental law. . . .

"In every instance, the details of regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their 'real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his . . . property, without due process of law' " (citing Mugler v. Kansas, 123 U. S. 623).

Further, with respect thereto in Flynn et al. v. Horst et al., 356 Pa. 20, it was said, page 31:

"The reasonableness of a 'police regulation' of any business depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to 'interfere with the enjoyment of individual rights beyond the necessities of the case': Reduction Company v. Sanitary Works, 199 U. S. 306, 318. 'The measure of police power must square with the measure of public necessity. The public need is the pole-star of the enactment, interpretation and application of the law,' per Wanamaker, J., in Leonard v. State, 100 Ohio St. 456, 157 N. E. 464." ·

The title to the Beauty Culture Law is:

"AN ACT To promote the public health and safety by providing for examination and registration of those who desire to engage in the occupation of beauty culture; defining beauty culture, and regulating beauty culture shops, schools, students, appentices, teachers, managers and operators; conferring powers and duties upon the Department of Public Instruction; providing for appeals to certain courts by applicants and licensees; and providing penalties."

Section 7, supra, of the act provides:

"It shall be unlawful for any school of beauty culture to permit its students to practice beauty culture upon the public under any circumstances except by way of clinical work upon persons willing to submit themselves to such practice after having first been properly informed that the operator is a student. No school of beauty culture shall, directly or indirectly, charge any money whatsoever for treatment by its students or for materials used in such treatment."

The regulation of beauty culture shops, schools, students, apprentices, teachers, managers and operators thereof is a proper subject for the exercise of the police power: 7 Am. Jur., Barber and Beauty Specialists, 613. The purpose of the Beauty Culture Law was not to impose restrictions upon trade or business, but to protect public health from the dangers attendant upon inexpert conduct of the practice of beauty culture by those not qualified by the necessary knowledge of the principles of sanitation and disease prevention.

While admitting that the beauty culture business can be regulated under the police power because of its relation to health, plaintiff contends that the requirement of section 7, supra, that it furnish to the public free of charge materials used by its students in clinical treatments violates both the Federal and State Constitutions in that it has no real, reasonable or substantial relation to the public health and safety or to any other

legitimate police power purpose and that therefore such requirement cannot be enforced. Plaintiff, however, in its bill does not question the constitutionality of any of the other provisions of the Beauty Culture Law, including the provision of section 7 thereof prohibiting any school of beauty culture from directly or indirectly charging any money whatsoever for treatment by its students, although it does argue in its brief that the provision last referred to is on the border line. In view of plaintiff's position, we have not considered it necessary to here refer to the other provisions of the act in question.

Is the provision of section 7 of the Beauty Culture Law and the regulation made by defendant pursuant thereto here challenged by plaintiff so palpably unreasonable as to suggest that their real object is not to protect the community or to promote the general well-being, but under the guise of police regulation to deprive plaintiff of its property without due process of law? Do they interfere with the enjoyment of plaintiff's individual rights beyond the necessities of the case?

These precise questions do not appear to have been passed upon by our own appellate courts. However, the question of the constitutionality of the Act of June 19, 1931, P. L. 589, 63 PS §551 et seq., as amended by the Act of May 9, 1935, P. L. 158, regulating barber shops, barber schools, and apprentices and students therein was before this court in Old Reliable Barber School v. Ade et al., supra. Section 12 of the amended act provided in part:

"No school of barbering shall permit its students to practice barbering on the public under any circumstances, except by way of clinical work upon persons willing to submit themselves to such practice, after first being properly informed that the operator is a student. No school of barbering shall directly or in-

directly charge any money whatsoever for treatment by its students, or for materials used in such treatments."

Here the late Judge Wickersham, in overruling preliminary objections filed to the bill of complaint and directing defendants to file an answer to the merits, said, page 315:

"We think this action should proceed to final hearing at which time we can determine the constitutional questions raised, and whether the act does deprive the plaintiff of property rights which he claims to have in the conduct of the barber schools, in which business he was engaged many years prior to the passage of the Act of 1931 and the amendatory Act of 1935. We are of opinion, therefore, that the affidavit of defense raising questions of law should be overruled and that this action should proceed to final hearing and disposition."

Thereafter plaintiff apparently did not press his bill and the constitutional question was not further considered by this court.

We do not think that the principle of the cases under which municipal ordinances, adopted pursuant to statutory authority regulating the hours of barber shops were held unconstitutional as not being a proper exercise of the police power,[2] controls the instant question. The statutory provision which plaintiff now challenges presumably was adopted by the legislature after full examination and on reasonable grounds for the sole purpose of protecting the public from untrained and unauthorized beauty culture operators and as such, upon development of all the facts, may be a proper exercise of the police power. This con-

---

[2] City of Nanticoke v. Stolarski, 26 D. & C. 271; Kellerman et al. v. City of Philadelphia et al., 34 D. & C. 264; Commonwealth v. Tuturice, 35 D. & C. 266; Saccone et al. v. Scranton et al., 341 Pa. 526 (dicta to the same effect).

clusion might be further strengthened in that the General Assembly of Pennsylvania, session of 1949, did not pass Senate Bill No. 971, eliminating from section 7 of the Beauty Culture Law the phrase at the end thereof, to wit, "or for materials used in such treatment". Again the charging of the reasonable cost of materials used by students in treatments although not in itself objectionable may, nevertheless, fall under the ban of the legislative prohibition because it might afford opportunities for the frustration of the main purpose of section 7, supra, admitted by plaintiff to be a valid exercise of governmental power, to wit, that no school of beauty culture shall directly or indirectly charge any money whatsoever for treatments given by its students: Grime et al. v. Department of Public Instruction et al., 324 Pa. 371, 383. Or stated otherwise, a transaction which is innocuous, if considered separately, may, nevertheless, be included in the scope of a general prohibitory measure designed to accomplish a purpose well within an admitted governmental power: Commonwealth v. Stofchek, 322 Pa. 513, 522.

In Equitable Loan Society, Inc., et al. v. Bell Secretary of Banking et al., 339 Pa. 449, it was said, pages 452-453:

"In challenging the constitutionality of the Act, plaintiffs are faced with the familiar principle that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so, since all presumptions are in favor of its constitutionality, and courts are not to be astute in finding or sustaining objections thereto: Hadley's Case, 336 Pa. 100, 104. 'The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining its constitutionality. In other words, the assembly has a free hand to

legislate on every subject in such manner as it deems proper unless there is a constitutional prohibition clearly expressed or necessarily implied.': Commonwealth v. Grossman, 248 Pa. 11, 15."

Again in Commonwealth ex rel. Attorney General v. Snyder, 279 Pa. 234, 239, it was said:

"When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible."

. With these general principles in mind, we feel that we cannot decide the constitutional question here involved on the pleadings now before us, since the only material fact averred by plaintiff in its bill in support of its contention is that the enforcement of the challenged statutory provision and the regulation made pursuant thereto will cost it upward of $5,000 a year. Its other averments on this question are not strictly factual but more in the nature of conclusions. Whether or not plaintiff is entitled to the relief it seeks will depend upon the findings of fact after the record has been made. Then and only then, in the performance of our duty, can we determine whether or not the aforesaid provision of section 7 of the Beauty Culture Law and the regulation promulgated pursuant thereto are a valid exercise of the police power. For this reason we do not deem it necessary to encumber this opinion with an analysis of cases in other jurisdictions bearing on the question here at issue.

### Decree

And now, August 15, 1949, the answer raising preliminary objections to plaintiff's bill of complaint is hereby dismissed and defendant is directed to file an answer on the merits within 30 days from the filing of this opinion.