## Nolan, Appellant, *v.* Jones.

*Constitutional law—Declaration of rights—Privileges and immunities of citizens—Special and class legislation—Police powers—Cold storage law—Butter—Act of May 16, 1913, P. L. 216—Constitution, Article I, Section 1, Article III, Section 7—Federal Constitution, 14th Amendment.*

1. The Act of May 16, 1913, P. L. 216, entitled "An act for the protection of the public health and the prevention of fraud and deception, by regulating the storage and sale of cold storage foods; fixing penalties for the violation of the provisions thereof, and providing for the enforcement thereof," and enacting in Section 13 of the act that no butter which is held in cold storage for a longer period than nine months shall be sold, offered or exposed for sale, does not, as to such enactment violate the bill of rights so far as the latter guarantees the free and unhampered enjoyment of property, or Section 7, Article III, of the Constitution of Pennsylvania, which prohibits legislation granting exclusive privileges and immunities to a special class, or the Fourteenth Amendment of the Constitution of the United States, which forbids property to be taken without due process of law.

2. The cold storage law is a legitimate exercise of the police power of the State for the protection of public health.

3. No part of the Federal Constitution, or any of the amendments thereto, takes from the states the right to determine what shall be prohibited as prejudicial to the public good; and the

fact that, under the peculiar circumstances of any given case, the particular article condemned happens to be "wholesome" cannot affect the application of a legitimate police statute comprehending a whole class of objects, of which the kind in question is one, the class being such as reasonably justifies regulation for the preservation of the public health.

4. The details of such regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their real object is not to protect the community, or to promote the general well being, but, under the guise of police regulation, to deprive the owner of his property without due process of law.

5. The Cold Storage Act is general in that it applies to a distinct and justifiable class, and all persons dealing in food articles, at their option may or may not bring themselves within the statute; if, under some circumstances, those who do not use cold storage facilities happen thereby to gain an apparent advantage, that is merely an incident, which in no proper sense can be accounted the granting of "exclusive privileges or immunities to a special class."

6. A statute which is a proper exercise of police power, does not deprive a person of his property without due process of law.

Argued Oct. 15, 1918. Appeal, No. 11, Oct. T., 1918, by plaintiff, from decree of Superior Court, April T., 1917, No. 120, reversing decree of C. P. Allegheny Co., July T., 1916, No. 665, on bill in equity in case of Edward S. Nolan v. Edward P. Jones et al., and Union Storage Company.   Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING, SIMPSON and FOX, JJ.  Affirmed.

Appeal from Superior Court.

The case turned upon the constitutionality of the Cold Storage Act of May 16, 1913, P. L. 216.  See Nolan v. Jones, 67 Pa. Superior Ct. 430.

*Error assigned* was the judgment of the Superior Court.

*N. R. Criss,* for appellant.—Whether the act bears a substantial relation to the public health is a legal question: Mugler v. Kansas, 123 U. S. 623; Bryan v. Chester

City, 212 Pa. 259; Railroad Commission Cases, 116 U. S. 307; Powell v. Pennsylvania, 114 Pa. 265.

The act denies equal protection of the law and is class legislation: Sayre Borough v. Phillips, 148 Pa. 482; Geiger-Jones Co. v. Turner, 230 Fed. 233; Yick Wo v. Hopkins, 118 U. S. 356; Gulf, Colorado, Etc., Ry. Co. v. Ellis, 165 U. S. 150; Com. v. Zacharias, 3 Pa. Superior Ct. 264.

*Wm. M. Hargest,* Deputy Attorney General, *Francis Shunk Brown,* Attorney General, and *J. A. Langfitt,* for appellee.—Every presumption is in favor of the validity of an enactment of the State legislature: Butcher's Union Slaughter House, Etc., Co. v. Crescent City Live Stock Co., 111 U. S. 746; Naganab v. Hitchcock, 202 U. S. 473; 50 L. Ed. 1113.

If there is a reasonable relation between the subject matter of this statute and the public health or welfare it is a proper exercise of the police power: Mugler v. Kansas, 123 U. S. 623; Munn v. Illinois, 94 U. S. 113; Lawton v. Steele, 152 U. S. 133; Powell v. Penna., 127 U. S. 678.

The details of a statute exercising the police power are for the legislature, not for the court: Powell v. Pennsylvania, 114 Pa. 265; Com. v. Pflaum, 50 Pa. Superior Ct. 55.

There is no denial either of the equal protection of the law or of due process of law in this statute: Mugler v. Kansas, 123 U. S. 623; Powell v. Pennsylvania, 127 U. S. 678; Savage v. Jones, 225 U. S. 501.

The act does not violate the bill of rights: Kirby v. Penna. R. R. Co., 76 Pa. 506; Miller v. Cornwall R. R. Co., 154 Pa. 473; Powell v. Pennsylvania, 114 Pa. 265.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4, 1919:

The broad point we have to determine is set forth in appellant's statement of the "question involved," thus: "The constitutionality of the act of assembly approved

May 16, 1913, P. L. 216, known as the Cold Storage Act of 1913, in so far as it limits the time within which foods (particularly butter) may be held in cold storage, and in so far as it prohibits the sale, or offering for sale, of foods held in cold storage for longer periods of time than those specified in Section 16 of said act."

The statute in controversy is entitled "An act for the protection of the public health and the prevention of fraud and deception, by regulating the storage and sale of cold-storage foods," etc.; and the section in question (16) provides, inter alia, that no butter which is held in cold storage for a longer period than nine months shall be sold, offered or exposed for sale.

Plaintiff contended in the court below, and, as appellant, urges here, that the provision under attack is contrary to the State and Federal Constitutions, in that it violates the bill of rights so far as the latter guarantees the free and unhampered enjoyment of property; that it, in effect, grants exclusive privileges and immunities to a special class and takes property without due process of law.

This appeal is from the judgment of the Superior Court, which overruled all these contentions, declared the legislation constitutional, and dismissed a bill in equity filed to restrain defendant from enforcing against plaintiff the provisions of the statute in relation to the storage of butter.

If the act is what it purports to be—a legitimate exercise of police power by the State—the judgment complained of must stand; and the burden rests on plaintiff to demonstrate that it is not, if he is to succeed in his appeal.

Before examining the act itself we shall state the general rules and principles which must guide us in considering appellant's several criticisms thereof.

In order to serve the public welfare, the State, under its police power, may lawfully impose such restrictions upon private rights as, in the wisdom of the legislature,

may be deemed expedient (Enders v. Enders et al., Exrs., 164 Pa. 266, 271) ; for "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community": Mugler v. Kansas, 123 U. S. 623, 665. A statute enacted for the protection of the public health, safety or morals, can be set aside by the courts only when it plainly has no real or substantial relation to those subjects, or is a palpable invasion of rights secured by the fundamental law. If "it does not appear upon the face of the statute, or from any facts of which the court must take judicial cognizance, that it infringes rights secured by the fundamental law, the legislative determination is conclusive": Powell v. Pennsylvania, 127 U. S. 678, 685.

On the other hand, "to justify the State in interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means [employed] are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals; [that is to say] the legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations" (Lawton v. Steele, 152 U. S. 133, 137) ; and, in deciding whether or not a statute is a legal exercise of police power, courts are not bound by the mere form of the act, but will "look at the substance of things": Mugler v. Kansas, supra, p. 661.

When, however, a law is enacted for "the protection of the public health" (as the present law purports to be), it must be assumed that the legislature proceeded "after full examination and on reasonable grounds" (Com. v. Pflaum, 236 Pa. 294, 298, affirming 50 Pa. Superior Ct. 55, 61) ; for "it is not a part of their [the court's"] functions to conduct investigations of facts entering into questions of public policy merely, and to

sustain or frustrate the legislative will, embodied in statutes, as they may happen to approve or disapprove its determination of such questions": Powell v. Pa., supra, p. 685. Moreover, no part of the Federal Constitution, or any of the amendments thereto, takes from the states the right to determine what shall be prohibited as prejudicial to the public good (Mugler v. Kansas, supra, p. 663); and the fact that, under the peculiar circumstances of any given case, the particular article condemned happens to be "wholesome" cannot affect the application of a legitimate police statute comprehending a whole class of objects, of which the kind in question is one, the class being such as reasonably justifies regulation for the preservation of the public health: Powell v. Com., 114 Pa. 265, 295; id. 127 U. S. 678, 684.

"The power which the legislature has to promote the general welfare is very great, and the discretion which this department of the government has, in the employment of means to that end, is very large": Powell v. Pa., supra, p. 685. In every instance, the details of regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their "real object is not to protect the community, or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his......property, without due process of law": Mugler v. Kansas, supra, p. 669.

With respect to the Act of 1913, supra, it is a matter of common knowledge that food will start to decay even in cold storage, and many articles, when subjected to a long period of such treatment, although able successfully to withstand inspection immediately before removal, will thereafter rapidly putrefy or deteriorate; hence it cannot be held, as urged by appellant, that any measure beyond enforced inspection is unreasonable.

Ordinarily, it is for the legislature to determine whether inspection or prohibition is the appropriate remedy (Schollenberger v. Pennsylvania, 171 U. S. 1, 16, 17);

and there is nothing about the present statute which would justify us either in determining that the inhibition under attack is an unreasonable exercise of police power or in assuming the law was enacted otherwise than in good faith and for the public welfare.

As to the remaining attacks upon the act, in Pennsylvania only the special legislation which is expressly forbidden by Sec. 7, Art. III, of our Constitution, is invalid on that particular ground, and there is no prohibition to be found therein against special food laws; furthermore, cold-storage food is now so universally used that it has, even in popular acceptance, fallen into a class by itself, which requires legislative regulation for "the protection of the public health." This is not undue, but just and proper classification; and, because an act such as the present, ex necessitate, fails to govern articles not placed in cold storage, that fact does not, in any legal sense, make the statute one granting special "privileges and immunities" to the owners of the latter class of food; or, to put it more concretely, if it were conceivable that butter could be preserved in saleable condition for more than nine months without modern scientific cold storage, and hence that owners thereof would be privileged to dispose of their property, on the market, under circumstances which would deprive owners of cold-storage butter from so doing, that would not make the legislation before us subject to the charge of granting exclusive privileges and immunities to a special class.

For example, in Com. v. Grossman, 248 Pa. 11, we recently sustained an act regulating private banking, but nonapplicable to bankers who had done business for seven years in the same locality and who were not engaged in the sale of railroad or steamship tickets, thereby leaving that class in possession of advantages, which might be called privileges and immunities, not possessed by those coming under the statute. Again, in Com. v. Puder, 261 Pa. 129, we sustained an act regulating loans

not exceeding $300 to "individuals pressed by lack of funds to meet immediate necessities," thereby indirectly giving to the creditors of this class of borrowers decided advantages not possessed by other creditors.

The Act of 1913, supra, is general in that it applies to a distinct and justifiable class, and all persons dealing in food articles, at their option, may or may not bring themselves within the statute; if, under some circumstances, those who do not use cold storage facilities happen thereby to gain an apparent advantage, that is merely an incident, which in no proper sense can be accounted the granting of "exclusive privileges or immunities to a special class," as illustrated by the cases last referred to and many others which might be cited: See Clark's Est., 195 Pa. 520.

Since the legislation in hand is a proper exercise of police power, there is no merit in the contention that the act deprives plaintiff of his property without due process of law. As said by Judge SHAFER, of the lower court, in Com. v. Charity Hospital of Pittsburgh, 198 Pa. 270, 277, "Lastly, it is claimed that the act in question [April 20, 1899, P. L. 66, prohibiting additional hospital buildings in congested portions of cities] is in violation of Section 1 of the 14th Amendment to the Constitution of the United States, in that it is claimed to deprive defendant of its property, or the use of it, without due process of law, and denies to the defendant the equal protection of the law. It is true that the act does prevent the defendant from using its property in a manner which before was lawful, but the defendant, equally with all other persons, natural and artificial, holds its property subject to valid police regulation, made and to be made, for the health and comfort of the people, and if the act in question is such a regulation, the defendant has no cause of complaint." This was affirmed per curiam. See also Hebe Co. v. Shaw, 39 U. S. Sup. Ct. R. 125.

The particular facts in the present case will be found stated by President Judge ORLADY, in Nolan v. Jones et

al., 67 Pa. Superior Ct. 430; there is no question of interstate commerce involved, nor has any point of jurisdiction or procedure been brought before us for decision.

We conclude that, in so far as the questions raised on this appeal are concerned, the Act of 1913, supra, is not in conflict with any provision of either the State or Federal Constitutions, and that the General Assembly, in enacting the law, did not transcend the limitations of legislative authority.

The judgment of the Superior Court is affirmed.