## Altoona Beverage and Ice Company v. Pennsylvania Alcoholic Permit Board.

R. A. Henderson, for plaintiff; W. F. Knauer, for defendant.

HARE, P. J., Dec. 22, 1927.—The matter here involved is the validity of an order revoking a permit issued to the plaintiff by the Alcoholic Permit Board of the Commonwealth of Pennsylvania under the provisions of the Act of Feb. 19, 1926, P. L. 16. The order of the board is assailed upon three grounds:

1. The order is not supported by competent and sufficient evidence.

2. The Act of Feb. 19, 1926, P. L. 16, is within the constitutional inhibitions contained in (a) article III, section 3; (b) article I, section 1, of the Constitution of the Commonwealth; (c) the 14th Amendment of the Constitution of the United States.

3. The said act does not disclose a legislative intent to regulate or control manufacturers of cereal beverages.

In the proceeding under investigation we do not have the benefit of any suggestion as to the particular testimony which may be irrelevant or incompetent under the pending issue. The statute absolves the board from the observance of technical rules of procedure. In this respect the Act of 1926 bears close analogy, we believe, to the Workmen's Compensation Act, and "contemplates liberality in the admission of proofs and the inferences reasonably to be drawn therefrom, . . . yet, after all the data has been gathered without regard to technical rules, all irrelevant and incompetent testimony must be rejected and the findings made to rest upon such relevant and competent evidence of sound probative character as may be left, whether circumstantial or direct:" McCauley v. Imperial Woolen Company, 261 Pa. 312. Also, by analogy, we conclude that the credibility of the witnesses who appeared and testified was for the determination of the board, and upon appeal the court may not disturb the findings of fact if there be competent evidence to sustain them. The question here is not whether there were technical irregularities in the admission of testimony, but whether the findings of fact are supported by competent proof.

We ascertain from the record that the appellant applied to the board for a permit to operate a brewery or cereal beverage plant, and proffered its bond in the sum of $10,000. The application and bond were approved, and, on May 14, 1926, a permit was issued to the appellant authorizing operation of its plant. A report of violations of the law having been filed with the board, an order or citation was issued requiring the appearance of the appellant at a time and place designated to show cause why the permit should not be revoked and canceled. The citation specified with certainty the grounds of the complaint. The company appeared by its officers, was represented by counsel, and challenged the jurisdiction of the board to hear and determine the issue and declare a forfeiture of the bond.

Witnesses were called, examined by counsel for the Commonwealth and cross-examined by counsel for the company. These witnesses were Federal agents, and testified that on Nov. 2, 1926, they inspected the plant of the company. During the course of their inspection they observed a truck entering the enclosure about the brewery. The truck received a cargo and left the brewery premises. They followed the truck in an automobile and kept it in sight until it arrived at the rear of the Walton Hotel. The truck was stopped and a barrel was removed. The agents then seized the truck and its cargo and required the operator, in their company, to drive it to the brewery. They took samples of beer from the barrels which were on the truck and from the barrels which were in the racking-room (the room from which shipments are made) and from the storage tank in the brewery. They found five persons at work in and about the brewery, one of whom was the brewmaster and the others were his helpers. There were seven full and eight half-barrels on the truck. Certain tests of the beer were made at the plant. All disclosed an alcoholic content in excess of 3 per cent. of alcohol by volume. Twelve samples were obtained, marked for identification and transmitted to a chemist for analysis. The chemist testified that one of the samples analyzed by him tested 2.14 per cent. of alcohol by volume and the portion of alcohol in all of the others exceeded 3 per cent. The company did not file any pleading or offer any evidence in contradiction of the testimony of the witnesses. Obviously, in this circumstance, if this were a trial by jury, the evidence is of the nature and character that the court would not be warranted in declining to submit it to that body for the determination of the issues of fact, and the finding of the jury would be binding upon the court. The rule

is applicable to other bodies empowered by law to be the triers of facts. The Permit Board is the tribunal in this instance, created by law to hear and determine the facts, and the findings are supported by sufficient relevant, material and competent evidence.

Notwithstanding the wide range and unusual ability displayed in the presentation of the constitutionality of certain sections of the statute, but little need be said in vindication of its validity. The question raised is whether the statute is unconstitutional in part by reason of the insufficiency of the title, and because it violates the constitutional limitation of legislative power with reference to persons and subjects. In approaching the solution of the question, we are told that "when the constitutionality of an act of assembly is attacked, it is the duty of every judge—without regard to his opinion as to the necessity for the statute or its wisdom—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible:" Com. v. Snyder, 279 Pa. 234. The same case is authority for the principle that a statute will not be declared unconstitutional unless it is clearly so, and every doubt must be resolved in favor of its validity.

That a title need name only the real subject of the legislation; that it need not set forth all enactments intended to be made in regard thereto; that it is not to be an index of the contents of the bill or a catalogue of the effects of the legislation; that it need not include subjects indirectly affected; and that if it fairly gives notice of the subject of the act with sufficient clearness to put one on inquiry into the body of the same, it is all that is necessary, are familiar principles frequently announced by our appellate courts and recently reiterated in Com. v. Snyder, supra, and Graeff v. Schlottman, 287 Pa. 342.

The title of the statute under examination is most comprehensive. The subject of the legislation is alcoholic liquors and the regulation of the manufacture, production, transportation and sale thereof. This is sufficient to put one upon inquiry as to the contents and effects of the legislation, and lead one to inquire as to the statutory definition of the commodity subject to the regulations and prohibitions of the act. We cannot state the conclusion in more appropriate form than in the language of Judge Henderson in Com. v. Blackman, 82 Pa. Superior Ct. 362: "Every one is presumed to know that traffic in alcoholic liquors is prohibited except under highly restricted conditions, and a law, the title of which relates to alcoholic liquors, and prohibits the manufacture, furnishing and traffic in and possession of liquors for beverage purposes, must be held to put one on inquiry as to its particular provisions. The whole subject of the manufacture, transportation, possession and sale of intoxicating liquors is brought to the attention of the reader of the title, and he is thus put on notice of the legislation relating thereto."

The contention that the statute is in violation of the due process provision of the Federal Constitution and of the inherent and the indefeasible rights of citizens within the constitutional guaranty of the Commonwealth must receive an adverse answer under the authority of Com. v. Dietz, 285 Pa. 511, and Nolan v. Jones, 263 Pa. 124.

Equally untenable is the assertion that the statute does not disclose any legislative intent to regulate or control manufacturers of cereal beverages. Upon that subject the legislature has promulgated its own definitions and construction. Intoxicating liquor, alcohol, the processes and methods of their production, and the plants or factories producing them, are given a specific and definite meaning by the terms of the statute, and they unquestionably embrace the manufacture of cereal beverages. The legislative

definition and construction of terms are binding upon the courts: McElhone v. Philadelphia Q. Club, 53 Pa. Superior Ct. 262.

Now, Dec. 22, 1927, the order of the Pennsylvania Alcohol Permit Board, revoking the permit issued to the Altoona Beverage and Ice Company, Inc., and forfeiting the bond given by said company to the Commonwealth, is affirmed, at the cost of the appellant.

From Robert W. Smith, Hollidaysburg, Pa.