623 A.2d 816

**Michael DANSBY and Margery Dansby, Appellants,**

v.

**THOMAS JEFFERSON UNIVERSITY HOSPITAL, Susan Cowchock, M.D., Laird G. Jackson, M.D. and Ellis, Michaelson, McDonald & Associates, P.C., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1992.

Filed March 19, 1993.

Reargument Denied May 17, 1993.

Leslie A. Mitnick, Doylestown, for appellants.

Glenn M. Campbell, Philadelphia, for Thomas Jefferson University Hosp., Cowchock, M.D. & Jackson, M.D., appellees.

Denise Lamay, Plymouth Meeting, for Ellis, Michaelson, McDonald & Associates, P.C., appellees.

Before WIEAND, FORD ELLIOTT and HOFFMAN, JJ.

WIEAND, Judge:

In this action for the wrongful birth of a child, the trial court held that the action was barred by Pennsylvania's wrongful birth statute, 42 Pa.C.S. § 8305(a), and sustained preliminary objections in the nature of a demurrer to the complaint. On appeal, the plaintiff husband and wife argue, as they did in the trial court, that the statutory ban on actions for

wrongful birth is unconstitutional. After careful review, we affirm the order entered by the trial court.

Margery Dansby became pregnant at the age of 40. Her obstetricians, Ellis, Michaelson, McDonald & Associates, P.C., recommended amniocentesis testing to determine whether there were any fetal defects. The test was performed at Thomas Jefferson University Hospital on August 1, 1988. Susan Cowchock, M.D., was the attending physician. Laird G. Jackson, M.D., was head of the Department of Genetics.

Margery Dansby and her husband, Michael, were informed that the test showed that she was carrying a normal fetus. This test result, however, was based on amniotic fluid analyzed and reported erroneously as belonging to Mrs. Dansby. Despite the fact that blood samples taken during early and late August indicated the presence of grossly abnormal alpha fetal protein levels, her obstetricians recommended that she continue her pregnancy. On January 2, 1989, Mrs. Dansby delivered a female child who was severely retarded and who suffers from spina bifida.

She and her husband then commenced an action against her medical providers for failing to perform a proper amniocentesis test and for failing to inform her of birth defects which should have been anticipated. They imply that if they had been properly informed, the fetus would have been aborted. They seek to recover economic losses as well as emotional and psychological injuries which they allegedly sustained. The defendants filed preliminary objections in the nature of a demurrer in which they asserted that an action for wrongful birth is precluded by the provisions of 42 Pa.C.S. § 8305(a). Plaintiffs responded with allegations that the Pennsylvania wrongful birth statute is in violation of the United States and Pennsylvania Constitutions. More specifically, they alleged that the statute violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States and both Article I, section 1, and Article III, section 32, of the Pennsylvania Constitution. The trial court

held that the statute did not violate constitutional safeguards and dismissed the complaint. Plaintiffs appealed.[1]

■ Lawfully enacted legislation enjoys a presumption of constitutionality. All doubts relating to the constitutionality of a challenged enactment must be resolved in its favor. *Edmonds v. Western Pennsylvania Hospital Radiology Associates*, 414 Pa.Super. 567, 574, 607 A.2d 1083, 1087 (1992). A party raising a constitutional challenge bears the burden of rebutting the presumption of constitutionality by a "clear, palpable, and plain demonstration that the statute violates a constitutional provision." *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 142, 477 A.2d 1302, 1304 (1984). See also: *Singer v. Sheppard*, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975).

The statutory provision challenged in this appeal, 42 Pa.C.S. § 8305(a), provides as follows:

(a) **Wrongful birth.**—There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born. Nothing contained in this subsection shall be construed to prohibit any cause of action or award of damages for the wrongful death of a woman, or on account of physical injury suffered by a woman or child, as a result of an attempted abortion. Nothing contained in this subsection shall be construed to provide a defense against any proceeding charging a health care practitioner with intentional misrepresentation under the act of October 5, 1978 (P.L. 1109, No. 261), known as the Osteopathic Medical Practice Act, the act of December 20, 1985 (P.L. 457, No. 112), known as the Medical Practice Act of 1985, or any other act regulating the professional practices of health care practitioners.

■ Appellants first contend on appeal that the statute limits the exercise of a woman's fundamental right to choose an abortion over childbirth and therefore violates the Equal

1. Plaintiffs have not argued in this appeal that the statute violates the due process clause of the Fourteenth Amendment.

Protection Clause of the Federal Constitution. We disagree. The doctrine of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) "protects the woman from unduly burdensome interferences with her freedom to decide whether to terminate her pregnancy." *Maher v. Roe,* 432 U.S. 464, 473–474, 97 S.Ct. 2376, 2382, 53 L.Ed.2d 484, 494 (1977). In order for a state to be in violation of *Roe v. Wade, supra,* the state must directly affect or impose a significant burden on the woman's right to an abortion. Legislation which does not place a government obstacle in the path of a woman who chooses to terminate her pregnancy will not be deemed unconstitutional. *Harris v. McRae,* 448 U.S. 297, 315, 100 S.Ct. 2671, 2687, 65 L.Ed.2d 784, 803 (1980).

Thus, the courts have upheld government regulations which withheld public funds for nontherapeutic abortions while allowing the use of public funds to pay for the medical costs of childbirth. They have reasoned that a government decision to favor childbirth over abortion by the allocation of public funds does not violate the doctrine of *Roe v. Wade, supra.* See: *Webster v. Reproductive Health Services,* 492 U.S. 490, 508–509, 109 S.Ct. 3040, 3050, 106 L.Ed.2d 410, 429 (1989); *Harris v. McRae, supra* 448 U.S. at 316–318, 100 S.Ct. at 2688, 65 L.Ed.2d at 804–805; *Maher v. Roe, supra* 432 U.S. at 478–480, 97 S.Ct. at 2385–2386, 53 L.Ed.2d at 497–498.

For similar reasons, the Pennsylvania wrongful birth statute does not violate a woman's constitutional rights under *Roe v. Wade, supra.* It does not impose a restriction upon or authorize action which impedes a woman's right to an abortion, nor does it impose procedures which unduly burden the exercise of that right. In *Edmonds v. Western Pennsylvania Hospital Radiology Associates, supra,* a similar constitutional challenge was made to the statute and rejected by the Superior Court, which said:

[O]ur review of the clear language contained within that provision reveals that it neither regulates nor directly affects such rights. Instead, that language merely extinguishes all causes of action arising from a claim that but for the

improper conduct of a medical provider, a child would have been aborted prior to birth.

*Id.* 414 Pa.Super. at 575–576, 607 A.2d at 1087. See: *Webster v. Reproductive Health Services, supra* 492 U.S. at 509, 109 S.Ct. at 3052, 106 L.Ed.2d at 430.

We conclude, therefore, that the legislative decision to preclude a cause of action for wrongful birth does not place a government obstacle in the path of a woman's right to choose to abort a fetus which she is carrying for whatever reason. Her freedom to decide is not impaired by a statute which denies her the right to bring an action against the physician who has negligently failed to advise her correctly regarding the health of the fetus. "[A]lthough government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation." *Harris v. McRae, supra* 448 U.S. at 316, 100 S.Ct. at 2688, 65 L.Ed.2d at 804.

■■ Moreover, to succeed on an equal protection challenge, the plaintiff "must show that the allegedly offensive categorization insidiously discriminates against [a] disfavored group." *Kranson v. Valley Crest Nursing Home,* 755 F.2d 46, 52 (3rd Cir.1985), quoting *Price v. Cohen,* 715 F.2d 87, 91 (3rd Cir.1983). When the group affected is not a suspect class and the right infringed is not deemed fundamental, the challenged statute must be sustained if it bears a rational relationship to a legitimate state interest. *Id.* at 52–53. See also: *Edelstein v. Wilentz,* 812 F.2d 128, 131–132 (3rd Cir.1987).

■ Pennsylvania's wrongful birth statute is rationally designed to meet a legitimate state interest. Not only does it reflect the state's view that a handicapped child should not be deemed better off dead and of less value than a "normal" child, but it also reflects a refusal to dictate to the medical profession how to practice in the field of obstetrics. Finally, the statute rejects causes of action which will frequently produce verdicts based on sheer speculation, with ever increasing malpractice insurance rates and a resulting loss of adequate medical care in this vital area. See: *Edmonds v.*

*Western Pennsylvania Hospital Radiology Associates, supra* 414 Pa.Super. at 578, 607 A.2d at 1088–1089 (Concurring Opinion by Wieand, J.).

The legislature, by statute, has freed physicians from liability for birth defects or handicaps for which the physician was not responsible. The physician's alleged negligence in failing to perform carefully an amniocentesis test cannot be said to be the proximate cause of the child's handicapped life. In this case, the child's disorders existed from the time of conception and were not the result of any negligence on the part of Mrs. Dansby's physicians. The "refusal to create new tort liability does not constitute governmental interference with the constitutionally protected access to abortion. The right to seek an abortion is neither predicated upon the existence of a negligence cause of action, nor is it deterred by the absence of such a cause of action." *Speck v. Finegold,* 497 Pa. 77, 97, 439 A.2d 110, 120–121 (1981) (Opinion by Nix, J.). Appellant's claims under the Equal Protection Clause of the U.S. Constitution must fail.

■ Appellants next contend that 42 Pa.C.S. § 8305(a) is in violation of Article I, section 1, and Article III, section 32, of the Pennsylvania Constitution because of its unequal treatment of medical malpractice victims. Although we are free to interpret our Constitution in a more generous manner than the federal constitution, *Fischer v. Department of Public Welfare,* 509 Pa. 293, 305, 502 A.2d 114, 121 (1985), "[i]n the equal protection area . . . we have chosen to be guided by the standards and analysis employed by the Supreme Court and have adopted those standards and analysis . . ." in interpreting our Constitution. *Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 83, 515 A.2d 1358, 1362 (1986). See: *Fischer v. Department of Public Welfare, supra* 509 Pa. at 310, 502 A.2d at 121–123; *Kroger v. O'Hara Township,* 481 Pa. 101, 117, 392 A.2d 266, 274 (1978).

■ Appellants argue that the Pennsylvania wrongful birth statute arbitrarily distinguishes between victims of pre-conception negligence and victims of post-conception negligence.

However, principles of equal protection do not absolutely prohibit a state from classifying persons differently and treating the classes in different ways. *James v. Southeastern Pennsylvania Transportation Authority, supra* 505 Pa. at 144, 477 A.2d at 1305. Equal protection requires that uniform treatment be given similarly situated parties. If distinctions are drawn, then the challenged policy must be reasonably justified. The level of justification required will depend upon the type of classification drawn and the governmental interest in promulgating the classification, and the relationship between that interest and the classification itself. *Smith v. City of Philadelphia*, 512 Pa. 129, 137–138, 516 A.2d 306, 310–311 (1986). The equal protection analytical framework is as follows:

> The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. *Id.* Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

*Id.* at 138, 516 A.2d at 311.

■■■ The entitlement to monetary damages because of another's negligence has never been held to be a fundamental right. *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 52 (3rd Cir.1985). Appellants contend, however, that the right to recover damages for personal injuries is an "important" right rendering the statute subject to an intermediate standard of review. In this they are supported by the Supreme Court decision in *James v. Southeastern Pennsylvania Transportation Authority, supra.* There, the Court held that a citizen had an important interest in access to the courts, making any restriction thereon subject to an intermediate

standard of review. *Id.* 505 Pa. at 146–147, 477 A.2d at 1306. The Court held, nevertheless, that a statute which required notice of a claim to a transportation authority within six (6) months of the injury passed constitutional muster.

Here, too, we conclude that the Pennsylvania wrongful birth statute passes constitutional muster. The protection of fetal life has been recognized to be an important state interest. The legislature's expressed concern is to prevent lawsuits leading to eugenic abortions of deformed or unwanted children. *Hatter v. Landsberg*, 386 Pa.Super. 438, 443, 445, 563 A.2d 146, 149–150 (1989), *allocatur denied*, 525 Pa. 626, 578 A.2d 414 (1990). Moreover, the cost of health care is a matter of national concern. Therefore, the state also has a valid interest in reducing the number of medical malpractice actions, as well as the cost of medical malpractice insurance. For these reasons, the Commonwealth may validly ban actions for defects or handicaps to children for which the physician is not responsible and which could have been avoided only by an abortion destroying the fetus.

Appellants also contend that the Pennsylvania statute violates Article I, section 11, of the Pennsylvania Constitution because it deprives citizens of a remedy for an injury suffered. This issue, however, was not raised in the trial court; and, therefore, we decline to consider it on appeal. See: *Baum v. Baum*, 395 Pa.Super. 182, 183 n. 1, 576 A.2d 1104 n. 1 (1990); Pa.R.A.P., Rules 302(a) and 1925(b). See also: *Gilmore by Gilmore v. Dondero*, 399 Pa.Super. 599, 604, 582 A.2d 1106, 1108 (1990).

Order affirmed.