634 A.2d 245

**COMMONWEALTH of Pennsylvania**

v.

**Kim T. ROGERS, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1993.

Filed Nov. 17, 1993.

Scott W. Schreffler, Seneca, for appellant.

Gerald L. Cassady, Dist. Atty., Franklin, for Com., appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge.

Without prior approval by the Pennsylvania Department of Transportation, Kim T. Rogers erected at his Dairy Queen Restaurant in Venango County a ninety-five (95) foot sign which penetrated the approach area to runway 02 at the Chess Lamberton Airport.[1]  Rogers was cited for violating 74 Pa. C.S. § 5701(a) and (b).  After being found guilty before a district justice, Rogers appealed to the Court of Common Pleas of Venango County.  There, following a trial de novo, Rogers was again found guilty of violating the statute.  Post-trial motions were denied, and Rogers was ordered to pay a fine of three hundred ($300.00) dollars.  On appeal,[2] Rogers argues that in the absence of an air easement or a zoning ordinance regulating the height of signs, the enforcement of Section 5701 of the Aviation Code was an unconstitutional taking of his property without just compensation.  The Commonwealth argues, however, that 74 Pa.C.S. § 5701 is a proper exercise of the police power and, as such, can be enforced against Rogers without first making compensation.

The provisions of 74 Pa.C.S. § 5701 are as follows:

(a) **Obstructions to aircraft within approach area.**—A person who erects and maintains any smokestack, flag pole, elevated tank, radio station tower, antenna, building, structure, any object of natural growth or other obstruction to the operation of aircraft within an approach area that extends above an inclined plane without first obtaining prior

1.  The Chess Lamberton Airport is located partly in the townships of Franklin and Sandycreek and is owned and operated by Venango County.

2.  Although the appeal in this case was filed prior to the entry of a judgment of sentence, Pa.R.A.P. 905(a) provides, in pertinent part, that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."  Accordingly, we will consider this appeal as properly taken from the judgment of sentence.  See: *Commonwealth v. Hamaker*, 373 Pa.Super. 510, 512–513 n. 4, 541 A.2d 1141, 1142 n. 4 (1988).

  Neither party has objected to the jurisdiction of this Court to hear the appeal; and, therefore, pursuant to Pa.R.A.P. 741(a), we have not considered whether an appeal would more properly lie in the Commonwealth Court.

approval thereof from the department commits a summary offense. Each day a violation of this subsection continues constitutes a separate offense.

**(b) Structures in close proximity to airport.**—A person who erects a new structure or adds to an existing structure in violation of guidelines or regulations adopted by the Federal Aviation Administration of the United States Department of Transportation, or who erects the structure with respect to the airport without, in either event, first obtaining prior approval from the department, commits a summary offense.

**(c) Definition.**—As used in this section the term "approach area" includes all that area lying within and above an inclined plane, starting at each end of each runway or landing strip of a public-use airport, as described by guidelines or regulations adopted by the Federal Aviation Administration of the United States Department of Transportation.

■ One who challenges the constitutionality of a statute bears a heavy burden. In *Dansby v. Thomas Jefferson University Hospital,* 424 Pa.Super. 549, 623 A.2d 816 (1993), the Superior Court observed:

Lawfully enacted legislation enjoys a presumption of constitutionality. All doubts relating to the constitutionality of a challenged enactment must be resolved in its favor. *Edmonds v. Western Pennsylvania Hospital Radiology Associates,* 414 Pa.Super. 567, 574, 607 A.2d 1083, 1087 (1992). A party raising a constitutional challenge bears the burden of rebutting the presumption of constitutionality by a "clear, palpable, and plain demonstration that the statute violates a constitutional provision." *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 142, 477 A.2d 1302, 1304 (1984). See also: *Singer v. Sheppard,* 464 Pa. 387, 393, 346 A.2d 897, 900 (1975).

*Id.* 424 Pa.Super. at 553, 623 A.2d at 818 (1993).

■ With respect to the takings clause of the United States Constitution, the United States Supreme Court has said:

The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." Most of our cases interpreting the Clause fall within two distinct classes. Where the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation. See, e.g., *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982). But where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole. See, e.g., *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123–125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The first category of cases requires courts to apply a clear rule; the second necessarily entails complex factual assessments of the purposes and economic effects of government actions.

*Yee v. City of Escondido, California,* —— U.S. ——, ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153, 162 (1992).[3] Here, it is the second category of taking which is at issue, for appellant has alleged that a state statute has deprived him of economically beneficial or productive uses of his land. In such situations, "the Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests *or denies an owner economically viable use of his land.*' " *Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798, 813 (1992), quoting *Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138,

**3.** Appellant has not asserted a violation of the takings clause under Article 1, § 10 of the Pennsylvania Constitution. Accordingly we will confine our analysis to the takings clause of the Fifth Amendment of the United States Constitution. We note, however, that Article 1, § 10 of the Pennsylvania Constitution employs language similar to that of the Fifth Amendment, providing in pertinent part: "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa.Constitution Article 1, § 10.

2141, 65 L.Ed.2d 106, 112 (1980). Thus, "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. South Carolina Coastal Council, supra* at ——, 112 S.Ct. at 2895, 120 L.Ed.2d at 815 (footnote omitted).

The state's police power has been described by the Pennsylvania Supreme Court as follows:

> The police power is the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. "It has long been recognized that property rights are not absolute and that persons hold their property 'subject to valid police regulation, made, and to be made, for the health and comfort of the people....'" *De Paul v. Kauffman,* 441 Pa. 386, 393, 272 A.2d 500, 504 (1971), quoting *Nolan v. Jones,* 263 Pa. 124, 131, 106 A. 235, 237 (1919). It must be recognized that one who challenges the constitutionality of the exercise of the state's police power, affecting a property interest, must overcome a heavy burden of proof to sustain that challenge. *See, e.g., Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Miller v. Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *Hadacheck v. Los Angeles,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); *Philadelphia v. Watt,* 162 Pa.Super. 433, 57 A.2d 591 (1948).

*Commonwealth v. Barnes & Tucker Co.,* 472 Pa. 115, 123, 371 A.2d 461, 465 (1977), *appeal dismissed,* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). With respect to the police power of the state, the Court has observed further as follows:

> Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. Under the 14th Amendment, property cannot be

taken except by due process of law. Regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed. The conditions on which its legitimate exercise is predicated should actually exist or their happening be so likely that restraint is necessary, similar to a court issuing a restraining order for injuries done or threatened to persons or property. Likewise, there should be a reasonable and substantial relation between the thing acted on and the end to be attained, one that promotes health, safety or general welfare, necessary to the common good, and a reasonable demand for regulation, not one that is merely an unnecessary "experimentation [or interference] with the fundamental rights of the individual": *Truax v. Corrigan,* 257 U.S. 312, 338 [42 S.Ct. 124, 131, 66 L.Ed. 254 (1921)].

While the tribunal to determine the proper exercise is in the first instance the legislature, the ultimate decision rests with the courts. If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the judicial duty to declare the given exercise of the police power invalid: *Nolan v. Jones,* 263 Pa. 124, 127 [106 A. 235]; *Miller v. Los Angeles,* [195 Cal. 477] 234 Pac. (Cal.) 381 [ (1925) ]; *Walls v. Midland Carbon Co.,* 254 U.S. 300 [41 S.Ct. 118, 65 L.Ed. 276 (1920)]. "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts": *Lawton v. Steele,* 152 U.S. 133, 137 [14 S.Ct. 499, 501, 38 L.Ed. 385 (1894)]. The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute

has a recognized police purpose, and whether it has a reasonable relation to the object to be attained.

Generally, the right concerns, as here, property and rights issuing out of it. No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power: *C., B. & Q. Ry. Co. v. Drainage Commissioners,* 200 U.S. 561 [26 S.Ct. 341, 50 L.Ed. 596 (1906) ]; *Salem v. Maynes,* 123 Mass. 372 [ (1877) ]; *In re Cherry,* 201 App. Div.N.Y. 856, 193 N.Y.S. 57, affirmed 234 N.Y. 607, 138 N.E. 465 [ (1922) ]. Property is held under the implied obligation that the owner shall use it in such way as not to be injurious to the community: *Windsor v. Whitney,* 95 Conn. 357, 111 Atl. 354 [ (1920) ].

*White's Appeal,* 287 Pa. 259, 264–265, 134 A. 409, 411–412 (1926). See: *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 88, 451 A.2d 1002, 1006 (1982) ("Reasonable restrictions are valid exercises of the police power and not unconstitutional takings under the power of eminent domain.").

Pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq., Congress exercised its power under the commerce clause to regulate air commerce by providing that there is a "public right of freedom of transit through the navigable airspace of the United States." 49 U.S.C. § 1304. See: *Shipp v. Louisville and Jefferson County Air Board,* 431 S.W.2d 867, 869 (Ky.1968), *cert. denied,* 393 U.S. 1088, 89 S.Ct. 880, 21 L.Ed.2d 782 (1969). See also: *County of Westchester v. Town of Greenwich, Conn.,* 793 F.Supp. 1195, 1203 (S.D.N.Y.1992); *Jackson Municipal Airport Authority v. Wright,* 232 So.2d 709, 711 (Miss.1970). "Navigable airspace" is defined at 49 U.S.C. § 1301(29) to "include airspace needed to insure safety in take-off and landing of aircraft." Thus, "[t]he navigable airspace of the United States has been incor-

porated into the public domain." *County of Westchester v. Town of Greenwich, Conn., supra.* See also: *City of Oakland v. Nutter,* 13 Cal.App.3d 752, 761, 92 Cal.Rptr. 347, 352 (1970); *Shipp v. Louisville and Jefferson County Air Board, supra.*

█ It has been observed that "the right to create and maintain obstructions and hazards on private property adjoining an airport may be limited by operation of the Federal Aviation Act of 1958, which places airspace needed to insure safety in take-off and landing as well as the airspace above the prescribed minimum altitude of flight within the public domain." 2A C.J.S., Aeronautics & Aerospace, § 73, at 209 (footnote omitted). It is also "generally recognized that a state, or a municipality acting pursuant to legislative authorization may, in the exercise of the police power, impose restrictions upon the height of buildings and other structures by reasonable and nondiscriminatory regulations where such restrictions have a substantial relation to the public health, safety, and welfare...." 8 Am.Jur.2d, Aviation, § 59, at 417 (footnote omitted). Nevertheless, the privilege to use the navigable air space does not automatically mean "freedom from liability for damage or demonstrable pecuniary loss to property owners below. Flights are not immune from private litigation, whether in the process of take-off or landing." *Martin v. Port of Seattle,* 64 Wash.2d 309, 316, 391 P.2d 540, 545 (1964), *cert. denied,* 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965). Thus, "[l]ow altitude flights which unreasonably interfere with the use and enjoyment of the land represent a trespass or partial taking creating a right to compensation." *County of Westchester v. Town of Greenwich, Conn., supra* at 1203. See: *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). "Even when such flights fall within the navigable airspace, and therefore use of this low altitude airspace is authorized, compensation is still required for the taking." *County of Westchester v. Town of Greenwich, Conn., supra* at 1204. See: *Griggs v. County of Allegheny,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).

■ The Federal Aviation Act at 49 U.S.C. § 1501 requires that any person who proposes to construct or make alterations to a structure in close proximity to an airport must give notice of such proposed construction to the FAA. See: 14 C.F.R. § 77.13 (FAA regulations governing when notice of construction is required). The FAA then makes a determination as to whether or not the proposed construction constitutes a hazard to air navigation. However, such a determination by the FAA has no enforceable legal effect. "The FAA is not empowered to prohibit or limit proposed construction it deems dangerous to air navigation." *Aircraft Owners and Pilots Ass'n v. FAA,* 600 F.2d 965, 967 (D.C.Cir.1979). See also: *Air Line Pilots' Association International v. FAA,* 446 F.2d 236 (5th Cir. 1971). Rather, such regulation has been left to the states. Thus, although Congress has concerned itself with the hazards posed by tall structures, it has left untouched the legal enforcement of standards, which are peculiarly adapted to local regulation. Therefore, the states may legislate concerning such matters. See: *Aeronautics Commission of Indiana v. State ex rel. Emmis Broadcasting Corp.,* 440 N.E.2d 700, 706 (Ind.App.1982). See also: *Kupster Realty Corp. v. State,* 93 Misc.2d 843, 848–850, 404 N.Y.S.2d 225, 230–231 (1978).

In Pennsylvania, the Aviation Code provides:

**§ 5501. Ownership of space**

(a) **General rule.**—The ownership of the space over and above the lands and waters of this Commonwealth is declared to be vested in the owner of the surface beneath, but the ownership extends only so far as is necessary to the enjoyment of the use of the surface without interference and is subject to the right of passage or flight of aircraft. Flight through the space over and above land or water, at a sufficient height and without interference to the enjoyment and use of the land or water beneath, is not an actionable wrong unless the flight results in actual damage to the land or water, or property thereon or therein, or use of the land or water beneath.

74 Pa.C.S. § 5501(a). See: *Hinman v. Pacific Air Lines Transport Corp.,* 84 F.2d 755, 758 (9th Cir.1936), *cert. denied,*

300 U.S. 654–655, 57 S.Ct. 431, 81 L.Ed. 865 (1937); *Yoffee v. Pennsylvania Power & Light Co.*, 385 Pa. 520, 533, 123 A.2d 636, 644 (1956).

The legislature in Pennsylvania has provided further as follows:

### § 5912. Power to adopt airport zoning regulations

(a) **General rule.**—In order to prevent the creation or establishment of airport hazards, every municipality having an airport hazard area within its territorial limits shall adopt, administer and enforce, under the police power and in the manner and upon the conditions prescribed in this subchapter and in applicable zoning law unless clearly inconsistent with this subchapter, airport zoning regulations for such airport hazard area. The regulations may divide the area into zones and, within the zones, specify the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow. A municipality which includes an airport hazard area created by the location of a public airport is required to adopt, administer and enforce zoning ordinances pursuant to this subchapter if the existing comprehensive zoning ordinance for the municipality does not provide for the land uses permitted and regulate and restrict the height to which structures may be erected or objects of natural growth may be allowed to grow in an airport hazard area.

(b) **Joint airport zoning board.**—Where any airport hazard area appertaining to an airport is located outside the territorial limits of the municipality encompassing the airport, all of the municipalities involved may, by ordinance or resolution, create a joint airport zoning board which shall have the same power to adopt, administer and enforce airport zoning regulations applicable to the airport hazard area in question as that vested by subsection (a) in the municipality within which the area is located. Each joint airport zoning board shall have as members two representatives appointed by each municipality participating in its

creation and, in addition, a chairman elected by a majority of the members so appointed.

(c) **Definition.**—As used in this section the word "airport" does not include facilities designated as heliports and which can be used only by rotary wing aircraft, nor airports which are private airports.

74 Pa.C.S. § 5912; and:

### § 5920. Acquisition of air rights

In any case in which it is desired to remove, lower or otherwise terminate a nonconforming structure or use, or the approach protection necessary cannot, because of constitutional limitations, be provided by airport zoning regulations, or it appears advisable that the necessary approach protection be provided by acquisition of property rights, rather than by airport zoning regulations, the municipality within which the property or nonconforming use is located, or the municipality or municipal authority owning the airport or served by it, may acquire by purchase, grant or condemnation, in the manner provided by the law under which municipalities are authorized to acquire real property for public purposes, such air right, aviation easement or other estate or interest in the property or nonconforming structure or use in question as may be necessary to effectuate the purpose of this subchapter. In the case of the purchase of any property or any easement or estate, or interest therein, or the acquisition thereof by the power of eminent domain, the municipality making the purchase or exercising the power shall, in addition to the damages for the taking, injury or destruction of property, also pay the cost of the removal and relocation of any structure or any public utility which is required to be moved to a new location.

74 Pa.C.S. § 5920.

■ Based upon these sections of the Aviation Code, appellant argues that Venango County was required to prevent the occurrence of airport hazards through either the adoption of zoning regulations or the obtaining of easements, and not by

the enforcement of section 5701 of the Code. Appellant contends that, in the absence of zoning regulations or an easement over his land, his ownership rights in the airspace were superior to the right of the County to operate the Chess Lamberton Airport. Thus, appellant's argument continues, he was free to make any necessary or beneficial use of his land which he desired, and any prosecution based thereon would constitute an unconstitutional taking of his property without just compensation. We disagree.

In *Flowers Mill Associates v. United States,* 23 Cl.Ct. 182 (1991), the issue was whether a determination by the FAA that construction would present a hazard to air navigation constituted a taking under the Fifth Amendment. In holding that no taking had occurred, the United States Claims Court reasoned:

The Fifth Amendment guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This guarantee is reinforced by the "safety net" of the Tucker Act, 28 U.S.C. § 1491. *Florida Rock Indus. v. United States,* 791 F.2d 893, 901 (Fed.Cir.1986). Traditionally, this constitutional guarantee prohibits the government from exercising its power of eminent domain in the name of the public good without justly compensating private landowners. The same protections have been extended into the area of inverse condemnation where no formal exercise of the power of eminent domain occurs. Inverse condemnation encompasses regulatory takings, and the Supreme Court has held that just compensation must be paid for governmental regulations which accomplish the same end as an exercise of the power of eminent domain. *English Evangelical First Lutheran Church v. Los Angeles County,* 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987).

The Fifth Amendment is not designed to limit governmental interference with property rights *per se;* it functions rather to secure compensation in the event of otherwise proper interference. *Id.* at 313, 107 S.Ct. at 2384. The well-established general rule has been that "while property

may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). There is no concrete formula which delineates the precise point at which a regulation ends and a constitutional taking begins. *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). A court instead must rely on *ad hoc,* factual inquiries into the circumstances of each case. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986).

It is clear that legitimate regulatory action does not constitute a compensable taking merely because the result may diminish the value of property or prevent its most beneficial use. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Skaw v. United States,* 740 F.2d 932, 939 (Fed.Cir.1984). Rather, the Supreme Court has articulated factors for consideration by a court when deciding whether a compensable taking has occurred. These factors include: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-backed expectations; and (3) the character of the governmental action. *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. The type of federal governmental action found to constitute a compensable taking generally involves activity which is equivalent to the physical invasion or destruction of substantial property rights.

. . . .

[I]n this case, FAA's determination that plaintiff's proposed construction in close proximity to an airport was a hazard to air navigation did not deprive the plaintiff of any property rights. FAA's hazard finding was advisory only and not legally enforceable. A landowner is not required to obtain a permit from FAA before proceeding with development, and FAA has no power to prevent construction. Even assuming that the economic impact of the aviation regulations on

Flowers Mill would be great and that it would interfere with their distinct, investment-backed expectations, the FAA action cannot be the basis of a Fifth Amendment taking because of the voluntary nature of the regulatory scheme. *Aircraft Owners and Pilots Ass'n v. FAA,* 600 F.2d 965 (D.C.Cir.1979); *Air Line Pilots Ass'n Int'l v. Department of Transp., FAA,* 446 F.2d 236 (5th Cir.1971).

*Flowers Mill Associates v. United States, supra* at 188–189 (footnotes omitted). See also: *3775 Genesee St., Inc. v. State,* 99 Misc.2d 59, 64–67, 415 N.Y.S.2d 575, 579–580 (1979); *Kupster Realty Corp. v. State, supra.* Compare: *Fitzgarrald v. City of Iowa City,* 492 N.W.2d 659 (Iowa 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2343, 124 L.Ed.2d 253 (1993) (zoning ordinances did not constitute regulatory taking of land adjacent to airport even though market value of land had to some extent been diminished as a result of the ordinances).

By enacting 74 Pa.C.S. § 5701, the legislature empowered PennDot to enforce mandatory compliance with FAA regulations which are designed to identify potential hazards to air navigation. Owners of land adjacent to an airport are required to obtain approval from PennDot prior to erecting structures on their lands which would penetrate an approach area or which would otherwise create a hazard to aviation as identified by FAA regulations calling for notification prior to construction. See: 67 Pa.Code §§ 479.1–479.4. After a request for approval of proposed construction has been submitted, PennDot is charged with determining whether the proposed construction will constitute a hazard to aviation. Unlike the determination made by the FAA, PennDot's determination is enforceable, rather than advisory. Thus, when a hazard is found to exist, PennDot may refuse to permit the proposed construction. See: *Flowers Mill Associates v. United States, supra* at 184–185. In order to ensure that landowners will comply with the requirement of prior approval by PennDot, the legislature has mandated that the failure to seek approval is a summary offense.

After careful review, we are persuaded that this statutory scheme, as established by section 5701 of the Aviation Code, is

a proper exercise of the police power. The statute is designed to promote the public health, safety and welfare by establishing a framework through which PennDot can identify potential hazards and prevent the erection of obstructions to air traffic, thereby ensuring the safe operation of airports throughout this Commonwealth. That the Aviation Code also has provisions calling for counties and municipalities to protect airports through zoning regulations or the obtaining of air easements does not diminish the primary responsibility of PennDot to ensure the safety of air travel throughout the Commonwealth. PennDot's authority under the Aviation Code is not dependent upon the duty of local governments to enact zoning laws to prevent airport hazards, but is independent of and primary to any determination made by local government authority.[4] In this manner, PennDot can ensure that the safety regulations promulgated by the FAA are applied uniformly throughout the Commonwealth to establish a minimum threshold of safety, irrespective of differing standards which may be adopted at the local level.

Finally and in any event, in the instant case it is clear that appellant, by virtue of his being prosecuted under section 5701 of the Aviation Code, has not been subjected to a taking of his property. Appellant was convicted for erecting a sign which violated FAA regulations without first obtaining the approval of PennDot as required by 74 Pa.C.S. § 5701. Because appellant did not seek prior approval, no decision was made by PennDot as to whether appellant should have been permitted to erect the sign. As such, there was no determination that appellant could not make full use of the airspace above his land as he desired. Appellant was prosecuted solely because he failed to obtain PennDot's approval prior to erecting the sign. Had appellant complied with section 5701 and sought approval for construction of the sign, a decision refusing to allow the sign may have given rise to a claim that a

4. Findings by PennDot that hazards to aviation are presented by proposed construction may also affect the agency's decisions concerning the rating and licensing of airports as set forth at 74 Pa.C.S. § 5301(b)(1) (conferring upon PennDot the authority to "[p]rovide for the examination, rating and licensing of airports.").

"taking" had occurred under the Fifth Amendment and requiring compensation. Such an issue, however, is not presently before the Court and with respect thereto we express no opinion.[5] Because appellant's property has not been "taken" and because he was properly convicted of violating section 5701 of the Aviation Code, the judgment of sentence is, as it must be,

Affirmed.

5. A ruling by PennDot to deny a request for approval of construction in the vicinity of an airport will be subject to administrative review and hearing before a Department hearing officer and appellate review in the Commonwealth Court. See: 67 Pa.Code §§ 491.1–491.13. Moreover, an aggrieved landowner may bring an action for inverse condemnation to recover compensation if there has been a taking of land in violation of the Fifth Amendment of the United States Constitution or Article 1, § 10 of the Pennsylvania Constitution.