J-A05018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VANESSA RAMIREZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARVEY BURGER, HARVEY BURGER | : | No. 1120 EDA 2020 |
| CONSTRUCTION, AND LAURIE | : | |
| SCHMIDT-RAMIREZ | : | |

Appeal from the Order Entered February 27, 2020
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 2015-09595

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:        **FILED SEPTEMBER 21, 2021**

Appellant Vanessa Ramirez appeals from the order entered after the trial

court granted summary judgment in favor of Appellees, defendants Harvey

Burger and Harvey Burger Construction (collectively Burger) and additional

defendant Laurie Schmidt-Ramirez[1] (Schmidt-Ramirez).   Appellant argues:

(1) the limited tort provision of the Motor Vehicle Financial Responsibility Law

(MVFRL) is unconstitutional; (2) Appellant's mother's limited tort election does

not apply to Appellant; (3) the trial court erred in not holding a hearing on

Appellant's constitutional claims; and (4) Appellant presented sufficient

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Throughout the record Schmidt-Ramirez's first name is spelled both Laurie
and Lauri.  For consistency, we use the same spelling as the trial court.
Additionally, we have corrected the spelling of Schmidt-Ramirez's surname in
the caption.

evidence to show that she suffered a "serious injury" and met the limited tort

threshold. We affirm.

The trial court summarized the facts of this matter as follows:

The underlying facts of this case involve a car accident which occurred in the early morning hours of January 3, 2014. At that time, Laurie Schmidt-Ramirez . . . was operating her vehicle on Gilbert Road in Chestnuthill Township, Monroe County, Pennsylvania. Plaintiff Laurie Schmidt-Ramirez's then minor daughter, [Appellant], was riding in the front passenger seat of the vehicle. The conditions of Gilbert Road that night were snowy and icy. Plaintiff Schmidt-Ramirez lost control of her automobile and it slid partially off the road. At some point, [Defendant] Harvey Burger . . . was operating a vehicle owned by his company, Defendant Harvey Burger Construction, along the same stretch of Gilbert Road while returning from a late night maintenance call. Upon approaching the crest of a hill, Defendant Burger's vehicle slid on the same patch of ice as Plaintiff Schmidt-Ramirez's had, resulting in Defendant Burger's vehicle striking the rear of the first car and sending it further into a ditch. Neither Plaintiff sought medical attention that night and Plaintiff Schmidt-Ramirez drove her damaged vehicle home. At the time of the accident, [Appellant] did not have a driver's license, an automobile, or her own automobile insurance policy. Plaintiff Schmidt-Ramirez was the named insured on an automobile insurance policy in which she had chosen limited tort coverage.

\* \* \*

On January 22, 2014, [more than two weeks after the accident, Appellant] presented at Pocono Medical Center where she was held overnight for examination. X-rays and MRI tests performed at the hospital came back normal. A CT scan showed a small, one centimeter hemorrhage in [Appellant's] left occipital region. She was then diagnosed with [post-concussion syndrome] and released home. On February 10, 2014, [Appellant] had a follow up visit where [she was again diagnosed with post-concussion syndrome, and] she was advised to return if her symptoms persisted. [Appellant] has not sought out further medical treatment in the six years since. With the exception of a one-time prescription from the hospital following her stay, [Appellant] has not taken any medication relating to her alleged injuries. She was

not working at the time of the accident, but attended Pleasant Valley High School where she was in her junior year. [Appellant] missed several days of school prior to her hospital admission and two weeks of school following it. [Appellant failed several exams after she returned to school.]

Additionally, [Appellant] attributes missed days throughout her senior year of high school and college career to headaches she continues to have since the accident. However, [Appellant] noted that she had multiple other stressors in her life and missed school in order to take care of Plaintiff Schmidt-Ramirez's ongoing health problems. Nevertheless, [Appellant] was able to graduate on time from Pleasant Valley High School and, later, from Pace University with degrees in psychology and political science. [Appellant] describes the lasting medical effects of her accident as causing her to have "scatter brains." At the time of her deposition, [Appellant] was employed at Wawa and looking for other work. As to her present condition, [Appellant] testified that she has headaches "every once in a while," perhaps as often as one a week. She also has occasional discomfort in her back and neck. These issues are managed with over the counter pain relievers. [Appellant] believes that the lasting effects of her concussion have limited her employment opportunities, but also stated she has not disclosed any issues to potential employers. Additionally, she claims that because of her injuries she has had to give up karate, playing guitar and strenuous walking or running. [Appellant] also attributes an incident at college where she passed out to the car accident.

Trial Ct. Op. & Order, 2/27/20, at 1-2, 7-9 (record citations omitted).

The trial court summarized the procedural history of this matter as follows:

A praecipe for writ of summons in this case was filed on December 23, 2015. A complaint was later entered on August 26, 2016. The complaint asserts various claims of negligence against both Burger defendants and claims of vicarious liability against Defendant Burger Construction. On May 30, 2017, [Burger] filed an answer, new matter, and cross-claim to Plaintiffs' complaint. Significantly, [Burger's] cross-claim asserts that Plaintiff Schmidt-Ramirez is solely liable for her daughter's injuries, making her both a plaintiff and additional defendant in this action. On

December 31, 2019, a motion for summary judgment was filed on behalf of Plaintiff Schmidt-Ramirez in her capacity as an additional defendant. The motion alleges that summary judgment is appropriate at this time because [Appellant's] alleged injuries are not severe enough to allow her to recover under her mother's limited tort policy. On the same date, [Burger] also filed a motion for summary judgment against [Appellant] based upon the same arguments. Oral argument was not held by this court on either motion. A decision was instead rendered based upon the submissions of the parties.

*Id.* at 2-3 (formatting altered). We add that Appellant filed responses to the motions for summary judgment and briefs arguing that the limited tort law was unconstitutional,[2] and alternatively that her post-concussion syndrome was a serious impairment for the purposes of limited tort. On February 27, 2020, the trial court granted the Appellees' motions for summary judgment and dismissed Appellant's claims for non-economic loss. *Id.* at 12.

Appellant then filed a motion for reconsideration, and in the alternative to certify the trial court's February 27, 2020 order for an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b). On April 2, 2020, the trial court granted the motion in part, severing Appellant's matter from co-plaintiff Schmidt-Ramirez's case, certifying this matter for an interlocutory appeal pursuant to

_____

[2] Consistent with Pa.R.C.P. 235, Appellant served the Attorney General of Pennsylvania with her supplemental brief in opposition to the motion for summary judgment, wherein she argued that 75 Pa.C.S. § 1705(d) was unconstitutional. The Attorney General did not file a response.

Section 702(b), and declaring that its February 27, 2020 order was a final

order.[3]

Appellant filed a notice of appeal on April 30, 2020, docketed at 1120

EDA 2020.[4]  Appellant subsequently filed a petition for review with this Court

on May 1, 2020, docketed at 55 EDM 2020.  This Court denied Appellant's

petition for review as moot stating, "the appeal at No. 1120 EDA 2020 [is]

properly before this Court."  Order, 55 EDM 2020, 7/16/20 (*per curiam*).

Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement.  The trial

court issued a Rule 1925(a) opinion adopting the analysis set forth in its

February 27, 2020 opinion and order.

Appellant raises four issues for our review:

1. Whether the Pennsylvania "pay to play" limited tort provision
   codified in 75 Pa.C.S.[] § 1705(d) invidiously denies one class
   of children injury victims, indigent or poor victims, a substantial

---

[3] The trial court entered its order more than thirty days after Appellant filed her motion for certification.  However, at that time, a general, statewide judicial emergency due to the COVID-19 pandemic was in effect, and nearly all deadlines had been suspended.  ***See In re: General Statewide Judicial Emergency***, 228 A.3d 1281 (Pa. 2020) (*per curiam*).  Therefore, Appellant's motion for certification was not deemed denied because the trial court did not act on it within thirty days.  ***Cf.*** Pa.R.A.P. 1311(b).

[4] Appellant's notice of appeal states that Appellant is appealing from the trial court's April 2, 2020 order certifying its February 27, 2020 order for an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b).  The appeal properly lies from the trial court's February 27, 2020 order granting Appellees' motions for summary judgment.  ***See, e.g., Oberdick v. TrizecHahn Gateway, LLC***, 160 A.3d 215, 216, 217 n.6 (Pa. Super. 2017) (interlocutory appeal was taken from the order that denied the defendants' motion for summary judgment, not the order that granted certification pursuant to Section 702(b)).  We have amended the caption accordingly.

benefit available to another class, minors of wealthy or financially stable families, in violation of constitutional provisions of equal protection, due process of law, equal access to justice, due course of law and deprivation of fundamental rights to compensation for violation of Appellant's right to safety?

2. Whether the trial [c]ourt erred in enforcing a financially challenged parent's tort option, 75 P[a].C.S. §1705(d) to limit her minor, non-voting, daughter's access to the Court to seek a remedy for full compensation for her "actual damages", where the daughter has sustained an injury, a brain bleed and concussion, and an invasion of her right to personal security, safety and, the loss of enjoyment of life as a passenger in a motor vehicle collision?

3. Whether the [trial c]ourt erred in failing to hold a hearing and to place the burden of proof on [Appellees] to establish the appropriate basis for enactment and contemporary appropriateness in 2014 of the so called "limited tort" option in 75 Pa.C.S. §1705(d) on [Appellees] affording a right of response to the Plaintiff?

4. Whether the trial [c]ourt erred as a matter of law in failing to adhere to its proper scope of review in assessing the limited tort classification on a motion for summary judgment by failing to review the case in a light most favorable to the non-moving party, and improperly weighing evidence rather than considering plaintiff's evidence as true, in violation of Pa.R.C.P. 1035.2?

Appellant's Brief at 5-6 (citations omitted).

**Jurisdiction**

Before we address the merits of Appellant's appeal, we examine if it is properly before this Court. We have explained that "the appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa. Super. 2018) (citation omitted). We may raise our jurisdiction to hear an appeal and determine the

appealability of an order *sua sponte*. **Kulp v. Hrivnak**, 765 A.2d 796, 798 (Pa. Super. 2000); **see also Sawyers v. Davis**, 222 A.3d 1, 2 n.1 (Pa. Super. 2019) (*sua sponte* examining whether the trial court's Pa.R.A.P. 341(c) certification was proper), *appeal denied*, 233 A.3d 675 (Pa. 2020). Further, when this Court issues a *per curiam* order relating to the appealability of a trial court's order, in which it does not detail its reasoning, we may revisit the appealability of the trial court's order without offending the law of the case doctrine. **See T.M. v. Elwyn, Inc.**, 950 A.2d 1050, 1055-56 (Pa. Super. 2008) (holding that this Court's *per curiam* order denying the appellant's petition for permission to appeal without explanation did not prohibit this Court from determining that orders at issue were appealable as collateral orders under Pa.R.A.P. 313).

Here, Appellant asserts that this Court has jurisdiction over a final order pursuant to Pa.R.A.P. 341(c). Appellant's Brief at 1-2. Appellant also notes that the trial court granted her motion to amend its February 27, 2020 order to add certification for an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b). **Id.** at 1. However, Appellant does not claim that this Court granted her permission to appeal from an interlocutory order pursuant to Pa.R.A.P. 312. **Id.** at 1-2.

Generally, "[f]or an order to be appealable, it must be (1) a final order, Pa.R.A.P. 341-342; (2) an interlocutory order appealable by right or permission, 42 Pa.C.S. § 702(a)-(b); Pa.R.A.P. 311-312; or (3) a collateral

order, Pa.R.A.P. 313." ***Ashdale v. Guidi Homes, Inc.***, 248 A.3d 521, 525 (Pa. Super. 2021).

Rule 341 of our Rules of Appellate Procedure provides, in relevant part:

**(a) General rule.** . . . an appeal may be taken as of right from any final order of a government unit or trial court.

**(b) Definition of final order.** A final order:

(1) disposes of all claims and of all parties; [or]

\*　　\*　　\*

(3) is entered as a final order pursuant to paragraph (c) of this rule . . .

\*　　\*　　\*

**(c) Determination of finality.**—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the trial court . . . **may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case**. Such an order becomes appealable when entered. **In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order**. . . .

Pa.R.A.P. 341(a)-(c) (emphases added). This Court has held that we do not have jurisdiction under Rule 341(c) when the trial court's order lacks language indicating that an immediate appeal would facilitate resolution of the entire case. ***See, e.g., Bailey v. RAS Auto Body, Inc.***, 85 A.3d 1064, 1070 (Pa. Super. 2014).

Instantly, on March 23, 2020, Appellant filed her motion for reconsideration, and in the alternative to certify the trial court's February 27,

2020 order for an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b). Appellant's motion did not request the trial court certify its order as a final order pursuant to Pa.R.A.P. 341(c). On April 2, 2020, the trial court granted Appellant's motion in part, severed Appellant's matter from co-plaintiff Schmidt-Ramirez's case, certified this matter for an interlocutory appeal pursuant to Section 702(b), and declared its February 27, 2020 order to be a final order. Order, 4/2/20, at 1-2. Specifically, the April 2, 2020 order states, in relevant part:

> The Order of February 27, 2020 is AMENDED to reflect that the matter as to Vanessa Ramirez is severed from that of Laurie Schmidt-Ramirez, for purposes of an appeal of our order granting summary judgment in favor of [Appellees] and dismissing the claims of Vanessa Ramirez. That makes her matter final for purposes of an appeal.

*Id.* at 1.

The trial court's order amending its February 27, 2020 order does not include language indicating that "an immediate appeal would facilitate resolution of the **entire case**." **See** Pa.R.A.P. 341(c) (emphasis added). Therefore, this order is not appealable under Rule 341(c). **See Bailey**, 85 A.3d at 1070.

We next examine the trial court's declaration that its February 27, 2020 order is a final order. **See** Order, 4/2/20, at 1. Under Pa.R.A.P. 341(a), a final order is appealable as of right. An order is final if it "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1); **see also Spuglio v. Cugini**, 818

- 9 -

A.2d 1286, 1287 (Pa. Super. 2003) (*per curiam*) (stating "final orders are defined as orders disposing of all claims and all parties" (citation omitted)).

We conclude that the trial court's February 27, 2020 order is not a final order because it only dismissed Appellant's claim for noneconomic damages, therefore, her claim for economic loss remains pending. **See** Trial Ct. Op. & Order at 12. Because the trial court's February 27, 2020 order did not dispose of all claims and all parties, even after severing the co-plaintiff Schmidt-Ramirez's action, it is not a final, appealable order. **See** Pa.R.A.P. 341(a), (b)(1); **Spuglio**, 818 A.2d at 1287; **see also Washington v. Baxter**, 719 A.2d 733, 737 (Pa. 1998) (noting that a prior appeal from an order entering summary judgment only with respect to the issue of serious impairment was quashed as interlocutory).

That is not the end of our inquiry. As previously discussed, the trial court's April 2, 2020 order also certified its February 27, 2020 order for an interlocutory appeal, stating:

> We also find that an interlocutory appeal under 42 Pa.C.S.[] Section 702(b) is warranted as the issue involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the February 27, 2020 order may materially advance the ultimate termination of the matter, rather than waiting for the conclusion of Co-Plaintiff's case.

Order, 4/2/20, at 2.

42 Pa.C.S. § 702(b) states:

> When a court . . . in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate

- 10 -

court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S. § 702(b); *see also Kensey v. Kensey*, 877 A.2d 1284, 1289 (Pa. Super. 2005) (explaining this Court has discretion to permit an interlocutory appeal where the trial court has certified its order under Section 702(b)).

"An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)." Pa.R.A.P. 312. Rule 1311 provides, in relevant part:

> **(a) General rule.**—An appeal may be taken by permission from an interlocutory order:
>
> (1) certified under 42 Pa.C.S. § 702(b) . . . .
>
> \*     \*     \*
>
> **(b) Petition for permission to appeal.**—Permission to appeal from an interlocutory order listed in paragraph (a) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order . . . .

Pa.R.A.P. 1311(a)-(b) (eff. Aug. 1, 2020).

As stated above, Appellant filed a notice of appeal on April 30, 2020, and the following day Appellant filed a timely petition for review in this Court, requesting permission to file an interlocutory appeal from the February 27, 2020 order. *See* Pa.R.A.P. 1311(b). In her petition for review, Appellant argued that this Court should grant her petition because, *inter alia*, that

- 11 -

limited tort provision of the MVFRL is unconstitutional because it violates equal protection and several of Appellant's constitutional rights and the trial court failed to evaluate the evidence light most favorable to Appellant as the non-moving party. Appellant's Pet. for Permission to Review, 55 EDM 2020, 5/1/20, at 10-30. Appellant contended that her constitutional issue presented a controlling question of law for which there is substantial ground for a difference of opinion, and that an immediate appeal would materially advance the ultimate termination of the matter. *Id.* at 29.

This Court denied Appellant's petition for review as moot stating, "the appeal at No. 1120 EDA 2020 [is] properly before this Court." Order, 55 EDM 2020, 7/16/20 (*per curiam*). That order does not provide any further reasoning as to why Appellant's appeal is properly before this Court. Having concluded that this Court does not have jurisdiction pursuant to Pa.R.A.P. 341, and because this Court's July 16, 2020 *per curiam* order denying Appellant's petition for review as moot did not provide any explanation for its conclusion that this appeal was properly before this court, we revisit the trial court's certification of its order for a permissive interlocutory appeal and Appellant's petition for review. *See T.M.*, 950 A.2d at 1055-56.

Upon our review of the trial court's certification and the issues raised in Appellant's petition for review, we conclude that Appellant has raised controlling questions of law where there is substantial ground for difference of opinion and permitting an immediate appeal may materially advance the ultimate termination of this matter. *See Kensey*, 877 A.2d at 1289; 42

Pa.C.S. § 702(b). We, therefore, exercise our discretion to assume jurisdiction over the instant appeal pursuant to Pa.R.A.P. 312.

## 75 Pa.C.S. § 1705

By way of background, in Pennsylvania, when purchasing automobile insurance, drivers have the option of selecting full tort or limited tort coverage. 75 Pa.C.S. § 1705. An individual who has purchased full tort coverage and is injured by a negligent driver can recover all medical and out-of-pocket expenses, as well as financial compensation for pain and suffering and other non-economic damages. *Varner-Mort v. Kapfhammer*, 109 A.3d 244, 248 (Pa. Super. 2015) (citing 75 Pa.C.S. § 1705(a)(1)(B)); *see also* 75 Pa.C.S. § 1705(c). "A limited-tort plaintiff also can recover all medical and out-of-pocket expenses; however, such a plaintiff cannot recover for pain and suffering or other non-economic damages unless the plaintiff's injuries fall within the definition of 'serious injury.'" *Varner-Mort*, 109 A.3d at 248 (citing 75 Pa.C.S. § 1705(a)(1)(A)); *see also* 75 Pa.C.S. § 1705(d). The term "serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702. "Persons who elect limited tort coverage pay lower premiums." *Bennett v. Mucci*, 901 A.2d 1038, 1041 (Pa. Super. 2006).

According to Section 1705, "[t]he tort option elected by a named insured **shall apply to all insureds under the private passenger motor vehicle policy** who are not named insureds under another private passenger motor vehicle policy." 75 Pa.C.S. § 1705(b)(2) (emphasis added). "[A] minor in the

custody of either the named insured or relative of the named insured[]" is an insured for the purposes of Section 1705. 75 Pa.C.S. § 1705(f)(2); **see also Hobbs v. Ryce**, 769 A.2d 469, 471-72 (Pa. Super. 2001).

Our Supreme Court has explained:

When the legislature reexamined the MVFRL in the late 1980s, it was apparent that the cost of automobile insurance had been steadily increasing over the preceding years. One of the legislative purposes in enacting the limited tort option as part of Act 6 was to lower insurance premiums by reducing the number of small claims for pain and suffering; the intent was that by lowering insurance premiums, automobile owners who had been pushed out of the insurance market because of skyrocketing costs could once again obtain affordable motor vehicle insurance.

While fashioning the limited tort option, the legislature spent a great deal of time balancing the rights of the limited tort elector to recover for noneconomic losses against the goal of lowering insurance costs.

**Washington**, 719 A.2d at 739 (citations omitted); **see also Paylor v. Hartford Ins. Co.**, 640 A.2d 1234, 1235 (Pa. 1994) (stating "[t]he repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiralling [sic] consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL").

**Constitutionality of Section 1705**

We discuss Appellant's first and third issues together because they are related.

In her first issue, Appellant argues that Section 1705's limited tort provision is unconstitutional because it violates her constitutional rights to safety, personal security, and access to the courts to seek a remedy for harm she has suffered; she also contends that limited tort violates equal protection because it discriminates based on wealth and age.[5]  Appellant's Brief at 28-61; Appellant's Reply Brief at 6-12, 16-17, 21-24.

Specifically, Appellant claims that Section 1705's limited tort provision violates Article I, Sections 1 and 2 of the Pennsylvania Constitution, which guarantee the rights to safety and personal security, and Article I, Section 11 of the Pennsylvania Constitution which guarantees the right of access to the courts to seek a remedy for harm.  Appellant's Brief at 28 n.4, 31-43. Appellant asserts that the application of limited tort to her impairs her right to be "made whole for actual damages sustained as a result of a tortfeasor's negligent conduct."  *Id.* at 33 (citation omitted); *see also id.* at 51-56. Appellant contends because Section 1705 infringes on these fundamental rights, this Court should apply strict scrutiny in our review of Section 1705. *Id.* at 31, 39-40.

Appellant also argues that that her right to a remedy for her auto accident injuries is personal to her and her mother's selection of the limited tort option should not waive that right.  *Id.* at 38.  Appellant reasons that her

---

[5] Appellant served her appellate brief and appellate reply brief on the Attorney General of Pennsylvania as required by Pa.R.A.P. 521.  The Attorney General did not file a response.

mother's limited tort election should be voidable with respect to Appellant because a parent may not waive claims on behalf of his or her minor children. *Id.* at 47-51 (citing, *inter alia*, **Commonwealth ex rel. Rothman v. Rothman**, 223 A.2d 919, 922 (Pa. Super. 1966); **Haines v. Fitzgerald**, 165 A. 52, 53-54 (Pa. Super. 1933)).

Appellant additionally contends that Section 1705 violates equal protection because it discriminates against people with less income who cannot afford the higher premiums of full tort automobile insurance. *Id.* at 30-31, 36-39, 42-47. Appellant contends that Section 1705 creates a two tier-recovery system: one for those who are financially stable and one for those who are financially disadvantaged, such as Appellant. *Id.* at 57-58. Appellant asserts that because income level is a suspect class, this Court should apply strict scrutiny in our review of her claims. *Id.* at 35-36, **see also id.** at 42-45. Likewise Appellant argues that she is a member of a suspect class of "poor children" which would trigger strict scrutiny review. *Id.* at 31; Appellant's Reply Brief at 20.

Appellant alternatively suggests that we apply intermediate scrutiny to her various constitutional claims. Appellant's Brief at 39, 40 n.7, 59-61 (citing, *inter alia*, **Yanakos v. UPMC**, 218 A.3d 1214 (Pa. 2019) (plurality)). Appellant contends that Section 1705 cannot withstand either strict or intermediate scrutiny because it does not advance a government interest and Appellees did not present any evidence to support its constitutionality. *Id.* at 36, 44-45, 57.

Appellant additionally argues that our Supreme Court has rejected cost containment as an objective of the MVFRL. *Id.* at 38-39, 56-57 (citing *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011); *Heller v. Pa. League of Cities & Muns.*, 32 A.3d 1213 (Pa. 2013); *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019)). Appellant asserts that the MVFRL's intended goal of reducing the costs of automobile insurance at the time of its enactment in the 1980s can no longer justify the restriction on her right to access the courts to seek a remedy for her injuries today. Appellant's Reply Brief at 6-12 (citing, *inter alia*, *Moyer v. Phillips*, 341 A.2d 441 (1975)).

In her third issue, Appellant argues that the trial court erred in not holding a hearing on her constitutional claims because Appellees, as proponents of the challenged statute, bear the burden of defending it. Appellant's Brief at 65-67; Appellant's Reply Brief at 26-27. Appellant argues that her constitutional claims should not be waived because she failed to request an evidentiary hearing before the trial court. Appellant's Reply Brief at 26-27. Appellant contends that she did not request the hearing because the trial court previously denied Appellee Burger's request for a hearing on his summary judgment motion, and that any further request for a hearing would have been futile. *Id.* at 26.

Schmidt-Ramirez responds that this Court affirmed the constitutionality of the limited tort system in *Dodson v. Elvey*, 665 A.2d 1223 (Pa. Super. 1995) (*en banc*), *rev'd on other grounds*, 720 A.2d 1050 (Pa. 1998), where this Court concluded that a litigant's constitutional right to a jury trial may be

expressly or impliedly waived, and "individuals do not have a vested right in the continued existence of an immutable body of negligence or tort law; a cause of action may indeed be extinguished by the legislature." Schmidt-Ramirez's Brief at 8-9 (quoting **Dodson**, 665 A.2d at 1230). Schmidt-Ramirez also claims that Appellant's constitutional right to a jury trial was not violated simply because her case was dismissed at the summary judgment stage. **Id.** at 9 (citing **Washington**, 719 A.2d at 741). Schmidt-Ramirez contends that Appellant bears the burden of proving that Section 1705 is unconstitutional. **Id.** at 11-13 (citing **James v. SEPTA**, 477 A.2d 1302 (Pa. 1984)).

Burger similarly argues that the trial court did not err in denying Appellant's constitutional challenge. Burger contends that the "legislature enacted Section 1705(d) to enforce its policy objective to contain the cost of automobile insurance," and while that "may have a harsh result, it is a constitutional means . . . to accomplish its policy objective to control the costs . . . and ensure more residents of Pennsylvania have access to automobile insurance." Burger's Brief at 7. Burger also argues that Appellant waived her claim that the trial court erred in not holding a hearing on her constitutional challenge because Appellant did not request a hearing nor did Appellant object to the court's ruling on the motions for summary judgment that it made without a hearing to develop an evidentiary record. **Id.** at 9-10.

The determination of whether the trial court correctly interpreted the state and federal constitutions presents a pure question of law, for which our

standard of review is *de novo*, and our scope of review is plenary. ***Robinson Twp. v. Commonwealth***, 147 A.3d 536, 572 (Pa. 2016).

> Our Supreme Court has explained that
>
> acts passed by the General Assembly are strongly presumed to be constitutional and that we will not declare a statute unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional. Courts endeavor to give statutes a constitutional interpretation if that is reasonably possible.

***Zauflik v. Pennsbury School Dist.***, 104 A.3d 1096, 1103 (Pa. 2014) (citations omitted and formatting altered); ***see also*** 1 Pa.C.S. § 1922(3) (stating "[i]n ascertaining the intention of the General Assembly in the enactment of a statute[,] the following presumptions, among others, may be used: . . . (3) [t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.").

> In considering an equal protection challenge, our Supreme Court has stated that:
>
> the Fourteenth Amendment does not absolutely prohibit the states from classifying persons differently and treating the classes in different ways. . . . The concept of equal protection . . . demands that uniform treatment be given to similarly situated parties . . . . If classifications are drawn, then the challenged policy must be reasonably justified. What counts as justification will depend upon which of three types a classification belongs to, what the governmental interest is in promulgating the classification, and the relationship of that interest to the classification itself.

***Zauflik***, 104 A.3d at 1117-18 (citations omitted and formatting altered).

In analyzing equal protection claims, the classification at issue is examined according to one of three tests: strict scrutiny, intermediate scrutiny, or any-rational-basis scrutiny. Strict scrutiny is applied to classifications affecting a suspect class or fundamental right. Intermediate scrutiny is applied to important rights and "sensitive" classifications. In all other cases, the challenged legislation will be upheld unless there is no rational basis for its enactment.

*Smith v. Coyne*, 722 A.2d 1022, 1025 (Pa. 1999) (citation omitted); *see also Zauflik*, 104 A.3d at 1118. Under strict scrutiny, "a law may only be deemed constitutional if it is narrowly tailored to a compelling state interest."

*Shoul v. Commonwealth, Dep't of Trans., Bureau of Driver Licensing*, 173 A.3d 669, 676 (Pa. 2017) (citation omitted).

Under intermediate scrutiny, the party defending the statute's constitutionality has the burden to demonstrate the legislation is substantially related to its purpose. To meet this burden, the statute's proponent can rely on a wide range of sources, including legislative history, empirical evidence, case law, and even common sense, but it may not rely upon mere anecdote and supposition.

*Yanakos*, 218 A.3d at 1225-26 (citations omitted).

This Court has explained rational basis review as follows:

a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

- 20 -

*In re Keyes*, 83 A.3d 1016, 1027 (Pa. Super. 2013) (citation and quotation marks omitted); *see also Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1211 n.19 (Pa. 2009) (explaining that under the rational basis review, "as long as a classification bears a reasonable relationship to a legitimate state interest, even though discriminatory, it will be deemed reasonable if any state of facts reasonably can be conceived to sustain it, and will only be struck down if it is based upon artificial or irrelevant distinctions used for the purpose of evading the constitutional prohibition" (citations and quotation marks omitted)).

Our Supreme Court "has rejected the proposition that financial need alone identifies a suspect class or that statutes that have a different effect on the rich and poor should on that basis alone come under strict scrutiny." *Probst v. Commonwealth, Dep't of Trans., Bureau of Driver Licensing*, 849 A.2d 1135, 1144 (Pa. 2004); *see also Norris v. Wood*, 485 A.2d 817, 820 (Pa. Super. 1984) (concluding that "poverty is not a suspect classification" when analyzing the constitutionality of the No-Fault Act, the predecessor to the MVFRL). Additionally, the United States Supreme Court has recognized that "age is not a suspect classification under the Equal Protection Clause." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) (citations omitted); *see also Driscoll v. Corbett*, 69 A.3d 197, 209-13 (Pa. 2013) (applying rational basis review to an age-based classification).

This Court has explained that "[t]he entitlement to monetary damages because of another's negligence has never been held to be a fundamental

right." ***Dansby v. Thomas Jefferson University Hosp.***, 623 A.2d 816, 821 (Pa. Super. 1993) (citation omitted).

Our Supreme Court has explained that "the guarantee of a 'remedy by due course of law' in Article I, Section 11, means that a case cannot be altered, in its 'substance', by a subsequent law . . . ." ***Ieropoli v. AC & S Corp.,*** 842 A.2d 919, 926 (Pa. 2004). The Court explained that when a cause of action that has accrued to a person, "[i]t is a vested right, which under Article 1, Section 11, may not be eliminated by subsequent legislation." ***Id.*** at 930 (citations omitted). However, the General Assembly may limit or even abrogate causes of action which have not yet accrued. ***See Freezer Storage, Inc. v. Armstrong Cork Co.,*** 382 A.2d 715, 721 (Pa. 1978). Furthermore, the legislature may abolish even causes of action which existed at common law. ***See id.*** Our Supreme Court explained that when interpreting Article I, Section 11, "we should remember that no one has a vested right in the continued existence of an immutable body of negligence law. . . . [T]he practical result of a [contrary] conclusion would be the stagnation of the law in the face of changing societal conditions." ***Id.*** at 720 (citation and quotation marks omitted).

Here, the trial court held:

Article I, Section 11 of the Pennsylvania Constitution provides that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial, or delay." PA. CONST, art. 1, § 11. A law which curtails a constitutional right to remedy must be examined under intermediate scrutiny to determine if it is substantially related to

achieving an important government interest. ***Yanakos v. UPMC***, 218 A.3d 1214, 1222 (Pa. 2019), *reargument denied*, [224 A.3d 1255] (Pa. Jan. 31, 2020). Specifically, the intermediate scrutiny standard of review "requires that the government interest be an 'important' one; that the classification be drawn so as to be closely related to the objectives of the legislation; and that the person excluded from an important right or benefit be permitted to challenge his exclusion on the grounds that in his particular case, denial of the right of benefit would not promote the purpose of the classification." ***Id[.]*** quoting ***Smith v. City of Phila.***, 512 Pa. 129, 516 A.2d 306, 311 (1986).

The two tier recovery system Pennsylvania put into place with 75 Pa.C.S.[] § 1705 was created in response to soaring insurance costs which were pricing people out of the insurance market all together. ***Dodson v. Elvey***, 445 Pa. Super. 479, 665 A.2d 1223, 1231 (1995), *rev'd*, 554 Pa. 245, 720 A.2d 1050 (1998). The cost of insurance was lowered by, in part, reducing the number of litigations for small claims of pain and suffering. ***Washington*** at 444. The result was intended to offer a less expensive alternative to those who would otherwise forgo insurance altogether. ***Id.*** We find that the government's interest in encouraging all motor vehicle operators to carry insurance is an important one. The limited tort statute does this by creating a classification of insurance which is more affordable, but in return, creates a greater risk that certain legal claims may not be pursuable. In the instant matter, it is likely that, accepting Plaintiffs' contentions, without a limited tort option Plaintiff Schmidt-Ramirez would have been without car insurance at all. This would have resulted in both Plaintiffs lacking first party insurance benefits. Further, the limited tort law does not leave [Appellant] without any possibility of recovery. As already explained, the law still protects those who have suffered economic losses and the very worst of injuries which manifest with life altering effects. Based upon all of this, we find that 75 Pa.C.S.[] § 1705 is not an unconstitutional violation of the remedies clause.

Trial Ct. Op. & Order at 10-11.

We begin with the level of scrutiny applicable to Appellant's claims: strict, intermediate, or any-rational-basis. ***See Zauflik***, 104 A.3d at 1118; ***Smith***, 722 A.2d at 1025. We disagree with Appellant's assertion that we

- 23 -

should apply strict scrutiny because Section 1705 impacts her fundamental rights to safety, personal security, and access to the courts to seek a remedy for harm. Appellant has not cited, nor has our research discovered, any cases recognizing a lawsuit to recover damages for personal injury as part of the fundamental right to safety protected by Article I, Sections 1 and 2 of the Pennsylvania Constitution. To the contrary, this Court has held the right to obtain monetary damages as a result of another's negligence is not a fundamental right. **See Dansby**, 623 A.2d at 821. However, a plurality of our Supreme Court recognized in **Yanakos**, that the right to a remedy, while not a fundamental right, is an important right. **Yanakos**, 218 A.3d at 1221-22.

Appellant also asserts that Section 1705 discriminates against two suspect classes: (1) those with less income and (2) minors. Our research indicates that the United States Supreme Court and the Courts of this Commonwealth have not recognized income level or age as suspect classes for the purposes of strict scrutiny, and these decisions are binding on this Court. **See Kimel**, 528 U.S. at 83 (explaining that age is not a suspect class triggering strict scrutiny review); **Driscoll**, 69 A.3d at 209-13 (applying rational basis review to age-based equal protection challenges); **Probst**, 849 A.2d at 1144 (rejecting "the proposition that financial need alone identifies a suspect class" for strict scrutiny review); **Norris**, 485 A.2d at 820 (concluding that "poverty is not a suspect classification" for the purposes of equal protection analysis). For the same reasons, we conclude that income level or

age are not "sensitive classifications" that would trigger intermediate scrutiny. *See Smith*, 722 A.2d at 1025; *see also Small v. Horn*, 722 A.2d 664, 672 n.15 (Pa. 1998) (explaining the classifications triggering intermediate scrutiny include gender and legitimacy).

A plurality of our Supreme Court has held that the right to a remedy is an important right, and statutes which infringe on that right are subjected to intermediate scrutiny. *See Yanakos*, 218 A.3d at 1220-27. However, the courts of this Commonwealth have rejected Appellant's argument that the right to a remedy prohibits the General Assembly from enacting laws that abolish or modify causes of action that have not yet accrued. *See Freezer Storage*, 382 A.2d at 720-21. Section 1705 was enacted in 1990 and Appellant's accident occurred in 2014. Section 1705's changes to the cause of action for automobile-related negligence for those who have purchased limited tort insurance were effective before Appellant's accident occurred. Therefore, the enactment of Section 1705 did not infringe on Appellant's right to a remedy under Article I, Section 11 because Section 1705 did not eliminate a cause of action that had already accrued to Appellant.[6] *Cf. Ieropoli*, 842

---

[6] Furthermore, *Yanakos*, which Appellant has cited in support of her claim that Section 1705 violated her right to a remedy, is distinguishable. In *Yanakos*, the statute of repose's seven-year limitation period completely barred the plaintiff's medical malpractice action even though plaintiff did not discover the defendants' negligence until more than seven years after the surgery. *Yanakos*, 218 A.3d at 1216-18. Here, Section 1705 does not bar individuals who have selected limited tort coverage from recovering damages for pain and suffering in all instances, rather it requires the plaintiff to prove she has suffered a serious injury. 75 Pa.C.S. § 1705(a)(1)(A), (d).

A.2d at 926, 930. Further, because "no one has a vested right in the continued existence of an immutable body of negligence law", the enactment of Section 1705 does not infringe on the right to a remedy for events that occurred after the law was enacted. **See Freezer Storage**, 382 A.2d at 720 (citation and quotation marks omitted). Therefore, because Section 1705 does not infringe on Appellant's right to a remedy, intermediate scrutiny is not applicable to our review of Section 1705 in the instant case. **See Zauflik**, 104 A.3d at 1118; **Smith**, 722 A.2d at 1025.

Accordingly, neither strict scrutiny nor intermediate scrutiny applies to our review of Appellant's claims, therefore the rational basis standard is appropriate to analyze the constitutionality of Section 1705 of the MVFRL. **See Zauflik**, 104 A.3d at 1118; **Smith**, 722 A.2d at 1025. It is axiomatic that a statute has a constitutional rational basis if it treats different groups differently "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." **See Keyes**, 83 A.3d at 1027; **see also Clifton**, 969 A.2d at 1211 n.19 (stating that under rational basis review, "as long as a classification bears a reasonable relationship to a legitimate state interest, even though discriminatory, it will be deemed reasonable if any state of facts reasonably can be conceived to sustain it").

As stated above, our Supreme Court in **Washington** explained that the General Assembly intended for the limited tort option of Section 1705 to lower the price of insurance premiums and encourage more drivers to purchase insurance by reducing the number of small claims for pain and suffering. **See**

*Washington*, 719 A.2d at 739; *see also Paylor*, 640 A.2d at 1235.  The limited tort system achieves this purpose by imposing the requirement that the insured must prove that she has suffered a serious injury, *i.e.*, death, serious impairment of body function, or permanent serious disfigurement, before she can recover damages for pain and suffering.  *See* 75 Pa.C.S. §§ 1702, 1705(a)(1)(A), (d).  In exchange for this additional evidentiary burden in order to recover damages for pain and suffering, insureds who select the limited tort option pay lower insurance premiums.  *See Bennett*, 901 A.2d at 1041.

Appellant has argued that our Supreme Court has rejected cost containment as an objective of the MVFRL, but this is incorrect.[7]  In *Heller*, our Supreme Court explained that cost containment is the policy underlying the MVFRL, but that the Court would not blindly affirm every insurance policy provision restricting coverage on the basis of cost containment.  *Heller*, 32 A.3d at 1222.  The *Heller* Court concluded that while the policy exclusion at issue did not "facially violate the cost containment policy of the MVFRL," as applied, it violated public policy with respect to underinsured motorist coverage.  *Id.* at 1228.  In *Williams*, our Supreme Court refused to invalidate

_____

[7] We note that none of the cases Appellant has cited in support of her position that cost containment is no longer a recognized objective of the MVFRL analyze Section 1705; rather they address other sections of the MVFRL relating to exclusions of uninsured or underinsured motorist benefits.  *See Gallagher*, 201 A.3d at 136; *Heller*, 32 A.3d at 1215; *Williams*, 32 A.3d at 1199.  Our Supreme Court in *Gallagher* did not address whether cost containment was still a valid objective of the MVFRL.

an insurance policy exclusion on the grounds that it conflicted with the goals and policies of the MVFRL, namely cost containment and the correlation between the scope of coverage and the reasonable premiums paid. **Williams**, 32 A.3d at 1206. Therefore, we conclude that the courts of this Commonwealth continue to recognize cost containment as an objective of the MVFRL. **See id.**; **Heller**, 32 A.3d at 1222.

Based on the foregoing, we conclude that there is a rational relationship between the legitimate governmental purpose of cost containment for automobile insurance and the differing levels of insurance protection for individuals based on the cost of purchasing full tort insurance and limited tort insurance coverage. **See Keyes**, 83 A.3d at 1027; **see also Clifton**, 969 A.2d at 1211 n.19. Appellant has not shown that the two categories of insureds that are based on the amount of premiums the insured pays, clearly, palpably, and plainly violates constitutional provisions regarding equal protection. **See Robinson Twp.**, 147 A.3d at 572; **Zauflik**, 104 A.3d at 1103.

We also disagree with Appellant's contention that the MVFRL improperly permits a parent to waive a claim on behalf of his or her child by selecting limited tort coverage. Pennsylvania law recognizes that a parent or guardian may not waive claims on behalf of a minor. **See Rothman**, 223 A.2d at 922 (holding "parents cannot bargain away the rights of minor children; children may bring their own actions, regardless of the validity of any agreement between the parents"); **Haines**, 165 A. at 53-55 (explaining that a minor may

disaffirm a release of liability that he and his parents signed and bring suit within a reasonable time of reaching the age of majority). However, the limited tort option does not waive claims, it instead imposes an additional evidentiary requirement that an insured must satisfy in order to recover noneconomic damages in exchange for lower insurance premiums.[8] *See Washington*, 719 A.2d at 736; *Bennett*, 901 A.2d at 1041; 75 Pa.C.S. § 1705(a)(1)(A)), (d). Appellant was able to file her own cause of action against Burger, notwithstanding the additional evidentiary burden imposed under limited tort. Appellant has not shown how the application of the limited tort option to minor children residing with the named insured clearly, palpably, and plainly violates her constitutional rights. *See Robinson Twp.*, 147 A.3d at 572; *Zauflik*, 104 A.3d at 1103.

As for Appellant's claim that the trial court erred by not holding a hearing on her constitutional issues, that claim is waived because Appellant raised it for the first time in her motion for reconsideration, and in the alternative to certify the order for interlocutory appeal. Issues raised for the first time in a motion for reconsideration to an order granting summary judgment are waived on appeal. *See Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391

---

[8] We note that our courts have recognized some exceptions for minors with respect to the additional requirements for recovery under limited tort, but not with respect to a minor who is an insured under a policy that was injured while in the named insured's vehicle. *See, e.g., Holland v. Marcy*, 883 A.2d 449 (Pa. 2005) (plurality) (holding that the children of the owner of registered, but uninsured, vehicle were not bound by limited tort option that owner was statutorily deemed to have chosen by driving an uninsured vehicle).

(Pa. Super. 2011) (holding issues raised in a motion for reconsideration filed after entry of summary judgment are "beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal").  Appellant argues that a request for a hearing would have been futile because the trial court already denied Burger's request for oral argument on the summary judgment motion.  This does not excuse the requirement to raise the issue before the trial court in the first instance.  **See** Pa.R.A.P. 302(a).

Accordingly, we conclude that Appellant's constitutional challenge merits no relief.  **See Robinson Twp.**, 147 A.3d at 572; **Smith**, 722 A.2d at 1025; **Keyes**, 83 A.3d at 1027.

### Enforceability Limited Tort Election Against Appellant

In her second issue, Appellant argues that her mother's limited tort election should not apply to her because enforcing that election against "unlicensed minors occupying motor vehicles is unnecessary to advance any compelling state interest or important state interest of ensuring financial responsibility of drivers."  Appellant's Brief at 62 (citing **L.S. v. David Eschbach, Jr., Inc.**, 874 A.2d 1150 (Pa. 2004)).  Appellant contends that in **L.S.**, our Supreme Court held that a parent's limited tort election did not apply to a minor pedestrian.  **Id.** at 63.  Appellant contends that the trial court erred in not considering **L.S.** and by concluding that Appellant was bound by her mother's limited tort election.  **Id.** at 64.

Schmidt-Ramirez responds that because she elected the limited tort option on her insurance and Appellant was a minor child in her custody at the

time, that election applies to Appellant. Schmidt-Ramirez's Brief at 9-10. Schmidt-Ramirez argues that **L.S.** is distinguishable from the instant case because **L.S.** involved a pedestrian. **Id.** at 10-11.

Burger responds that Schmidt-Ramirez elected limited tort coverage on her automobile insurance policy and, as a minor child residing with Schmidt-Ramirez at the time of the accident, that election applied to Appellant. Burger's Brief at 7-9. Burger argues that because Appellant did not produce any evidence that she had coverage under another policy, her mother's limited tort election was binding on Appellant. **Id.** at 9.

In **L.S.**, our Supreme Court considered whether a parent's limited tort election applied to her minor child, who was hit by a car after getting off a school bus. **L.S.**, 874 A.2d at 1152. At that time, the minor plaintiff resided with her mother, who had elected limited tort coverage under her car insurance policy. **Id.** The Court observed that "[a]s a minor residing in the household of [mother], L.S. was an 'insured' under her mother's policy." **Id.** (footnote omitted). The **L.S.** Court noted that "unlike statutes specifically required to be construed strictly, the MVFRL is to be accorded a liberal construction, in favor of the insured." **Id.** at 1155 (citation and quotation marks omitted). The Court held that

> the object of all statutory interpretation is to ascertain and effectuate the intent of the legislature. It is well established that the prevailing intent of the General Assembly in enacting the MVFRL was to reduce the escalating cost of automobile insurance premiums, while requiring financial responsibility. Nevertheless, applying Section 1705 to innocent pedestrians would defeat the mischief that Section 1705 was designed to remedy, namely to

deter individuals from failing to insure their vehicles. Clearly, the act of punishing innocent pedestrians, who are completely unassociated with a motor vehicle, would do little to deter an individual from failing to procure motor vehicle insurance.

Because Section 1705 is silent with regard to pedestrians, it would be inappropriate for this Court to link the recovery rights of an innocent pedestrian with a system designed to reduce the increasing cost of motor vehicle insurance.

*Id.* at 1156 (citations omitted). Further, the Court noted "the injuries that [the minor plaintiff] suffered did not result from her own personal use of a motor vehicle, as either an operator or an occupant." *Id.*

Instantly, the trial court did not address *L.S.* in its opinion, nor in its order granting Appellees' motions for summary judgment.

As discussed herein, our Supreme Court held in *L.S.*, that a limited tort election did not apply to a pedestrian. The *L.S.* Court observed that under Section 1705, a child who resides in the household of a parent is an "insured" under that parent's policy. *See L.S.*, 874 A.2d at 1152, 1156; *see also* 75 Pa.C.S. § 1705(f). Accordingly, *L.S.* does not indicate a parent's limited tort election is inapplicable to a minor child's personal injury claims that occurred when the child was a passenger in the parent's car.

Here, Appellant was a passenger in her mother's car at the time of the collision with Burger's vehicle. Because Appellant was not a pedestrian at the time of the accident, the Court's holding in *L.S.* does not apply. Appellant was an insured within the meaning of Section 1705 and her mother's limited tort election at the time of the accident is binding on Appellant, therefore her

second claim merits no relief. *See L.S.*, 874 A.2d at 1152; *see also* 75 Pa.C.S. § 1705(b)(2), (f); *Hobbs*, 769 A.2d at 471-72.

**Whether Appellant Suffered a Serious Impairment**

In her final issue, Appellant argues that the trial court erred when it granted the Appellees' motions for summary judgment because the trial court failed to view the evidence in the light most favorable to her as the non-moving party. Appellant's Brief at 68-75; Appellant's Reply Brief at 5, 12-15, 28-35. Specifically, she claims that the evidence demonstrates that she "sustained a brain bleed, a concussion and post concussive syndrome symptoms that interfered with her school work and career plans . . . [and] continues to suffer periodic headaches to this day." Appellant's Brief at 69. She contends that her brain bleed, concussion, and post-concussion syndrome establish a jury question as to whether she sustained a serious injury. *Id.* at 69-71. Appellant asserts "[i]t is common knowledge that concussions can tend to have permanent consequences." *Id.* at 71. Appellant notes that "[a]n impairment need not be permanent to be serious." *Id.* at 74-75 (quoting *Washington*, 719 A.2d at 740). Further, Appellant contends that the determination of whether plaintiff has sustained a serious injury "should be made by the jury in all but the clearest of cases." Appellant's Reply Brief at 5 (quoting *Washington*, 719 A.2d at 740).

Burger responds that Appellant did not sustain a serious injury. Burger's Brief at 12-19. Burger argues that Appellant sought medical treatment only two times after the accident, did not produce a copy of her MRI report, and

the medical evidence in the record does not shown she suffered a permanent serious disfigurement. *Id.* at 13-18 (citing **McGee v. Muldowny**, 750 A.2d 912, 913-14 (Pa. Super. 2000)). Burger also notes that Appellant did not produce any medical expert testimony to establish a causal connection between her alleged injuries and the accident. *Id.* at 18-19 (citing, *inter alia*, **Albert v. Alter**, 381 A.2d 459, 470 (Pa. Super. 1977)).

Schmidt-Ramirez likewise argues that Appellant has not presented any medical evidence or expert reports to establish she suffered a serious impairment of a body function. Schmidt-Ramirez's Brief at 20-21.

The standards governing our review of a trial court's grant of summary judgment are well settled.

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

**Michael v. Stock**, 162 A.3d 465, 472-73 (Pa. Super. 2017) (citation omitted).

The **Washington** Court explained that "threshold determination of whether a serious injury has been sustained is" to be made by the jury instead of the trial judge "unless reasonable minds could not differ on the issue of

whether a serious injury had been sustained." ***Washington***, 719 A.2d at 740 (footnote omitted). Our Supreme Court observed that the MVFRL did not define "serious impairment of a body function" and adopted the following definition:

> The "serious impairment of body function" threshold contains two inquiries:
>
> a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?
>
> b) Was the impairment of the body function serious? **The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment**. . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

***Id.*** (quoting ***DiFranco v. Pickard***, 398 N.W.2d 896, 901 (Mich. 1986)) (emphasis added); ***see also Vetter v. Miller***, 157 A.3d 943, 948 (Pa. Super. 2017) (stating that "evidence of how a particular injury affects a specific plaintiff, including how that injury negatively impacted the person's ability to perform his or her chosen profession, is relevant in determining whether a plaintiff has suffered a serious impairment of a body function" (citation omitted)).

The ***Washington*** Court then examined the evidence to determine if "reasonable minds could not differ on the conclusion that [the plaintiff] cannot recover on the evidence adduced." ***Id.*** Our Supreme Court concluded:

Even when this evidence is taken in the light most favorable to [the plaintiff] as the non-moving party, we find that reasonable minds could not differ on the conclusion that [the plaintiff's] injury was not serious. [The plaintiff's] injuries as diagnosed by the emergency room physician were mild and he was discharged after a few hours. Furthermore, he missed only four or five shifts at both his full-time and part-time jobs, where he was required to perform most of his work while on his feet. Also, the treatment for his injuries was not extensive. Finally, although some type of arthritis or coalition is affecting one of the joints in [the plaintiff's] right foot, the injury seems to have had little or no impact on [the plaintiff's] performance of his job functions and engagement in personal activities. Therefore, although the evidence, when taken in the light most favorable to [the plaintiff], does show that he was injured in the accident, the impairment resulting from that injury is clearly *de minimis.*

[The plaintiff], however, is of the opinion that he has adduced sufficient evidence of a serious impairment of body function so that the issue should go to a jury. In arguing this, [the plaintiff] focuses primarily on [his doctor's] pronouncement that there was some type of arthritis or coalition in [his] right foot; apparently, [he] assumes that this evidence alone is sufficient to bring the matter to a jury. [The plaintiff] seems to have misapprehended the nature of the inquiry here. **The question to be answered is not whether [the plaintiff] has adduced sufficient evidence to show that [the plaintiff] suffered any injury; rather, the question is whether [he] has shown that he has suffered a serious injury such that a body function has been seriously impaired.** Clearly, it is insufficient for [the plaintiff] to show that there has been some injury—no matter how minor—in order to avoid the entry of summary judgment against him. Were we to fail to require [a plaintiff] to adduce evidence that not only was there an injury, but that it was also serious, before allowing him to present his case to the jury, we would make a mockery out of the summary judgment standard. **Although [the plaintiff] has introduced evidence that there is some type of arthritis or coalition in his foot, he has failed to show that this injury has had such an impact on him so that it constitutes a serious injury.** Therefore, we reject [the plaintiff's] argument.

*Washington*, 719 A.2d at 741 (emphases added).

This Court has held that when a limited tort plaintiff presents subjective allegations of a serious impairment without objective medical evidence, the plaintiff has not established a substantial dispute of material fact to withstand summary judgment. *McGee*, 750 A.2d at 915. In *McGee*, the plaintiff went to the emergency room after a vehicle accident and was prescribed Tylenol for a cervical strain. *Id.* at 914. The plaintiff underwent several months of physical therapy. *Id.* Additionally, he consulted with several doctors, and an MRI and an X-ray of his right shoulder were both unremarkable. *Id.* Although the plaintiff complained that the physical limitations from his accident prevented him from working as a plumber, he worked as an electrician without limitations on his ability to lift objects. *Id.* at 914-15. The *McGee* Court affirmed the trial court's order granting the defendant summary judgment. *Id.* at 915.

> Instantly, the trial court explained:

> Reviewing all of the evidence in the light most favorable to the non-moving party we find that [Appellant] has not presented sufficient evidence to show that she suffered a serious impairment of body function. Although she describes herself as "scatter brained" and alleges she sometimes has difficulty thinking, [Appellant] has not sought medical attention or treatment for more than six years. Meanwhile, she was able to graduate from high school and earn a degree from Pace University. She is, as of the time of her deposition, employed. Her complaints of continued medical issues are largely subjective. [Appellant] has failed to provide any expert medical testimony regarding the long term effects of a concussion and how such is affecting her life. The only medical documents available to the Court are from her hospital and doctor's visit which, again, occurred six years ago. There is no medical diagnosis or findings that tie any of her current alleged physical ailments to the accident. Although we are sympathetic

to [Appellant's] family situation, it is also clear from the evidence that she was, and continues to be, under a number of stressors unrelated to her alleged injuries. Therefore we find that [Appellant] did not suffer a serious impairment of a body function as defined by the Pennsylvania Supreme Court in **Washington** and is barred from recovering for noneconomic damages under 75 Pa.C.S.[] §1705.

Trial Ct. Op. & Order at 9 (record citations omitted).

Instantly, the medical evidence, specifically the Pocono Medical Center records from January 2014, including the progress notes and patient discharge summary, indicate that Appellant suffered from post-concussion syndrome and that the doctor recommended that she return to school after about two weeks after her discharge from the hospital. R.R. at 305a, 309a.[9] By the time of her follow up visit on February 10, 2014, Appellant had returned to school and was not going to take additional time off. *Id.* at 311a-313a. The doctor noted on the chart for the February 10, 2014 follow up visit that Appellant "continues to suffer from post-concussive symptoms, though they are improving[]" and recommended that Appellant avoid activities that trigger her headaches and get adequate sleep. *Id.* at 312a. Contrary to Appellant's assertion, the CT scan report states "[t]here is 1 cm gyral hyperdensity in the left occipital region. This may represent a hemorrhagic contusion or gyral hemorrhage alternatively this may be artifactual. This can be definitely characterized with MRI or follow-up CT." *Id.* at 288a. Appellant asserts that she also underwent an MRI but did not present an MRI report in response to

_____

[9] We may cite to the reproduced record for the parties' convenience.

Appellees' motions for summary judgment. Appellant also did not submit an expert report opining that Appellant suffered a hemorrhage in her brain, which she refers to as a "brain bleed", as a result of the car accident. Further, Appellant did not present an expert report explaining how a hemorrhage in her brain and/or a concussion would affect her body function.

Appellant testified in her deposition that five years have passed since the accident, and that she continues to experience headaches, neck pain, and absentmindedness. *See* N.T. Appellant's Dep., 8/19/19, at 12, 50-52, 70. Appellant also stated she is no longer able to participate in certain activities such as karate and playing guitar. *Id.* at 54-56. However, Appellant has not presented expert reports or medical records, or any form of objective medical evidence establishing that the injuries she sustained in the January 3, 2014 car accident caused her ongoing complaints. Further, Appellant has not presented medical evidence concluding that her post-concussion syndrome was a serious impairment.

We agree with the trial court that Appellant's medical evidence, *i.e.*, the records from her admission to the emergency room, the CT scan report, and the record of her follow up doctor visit, even when viewed in the light most favorable to Appellant, does not establish Appellant suffered a serious impairment of a body function. *See Washington*, 719 A.2d at 740-41; *McGee*, 750 A.2d at 914-15.

Accordingly, the trial court correctly concluded that reasonable minds could not differ as to whether Appellant sustained a serious injury, and we

discern no error or abuse of discretion in the trial court's decision that Appellant did not suffer a serious injury.  For these reasons, we affirm the trial court's order granting summary judgment.  *See Washington*, 719 A.2d at 740; *Michael*, 162 A.3d at 472-73.

Order affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2021